JOHN McCALEB, EMPLOYEE, CLAIMANT-RESPONDENT, v. VESTA L. GREER, EMPLOYER AND THE TRAVELERS INDEMNITY COMPANY, INSURER, DEFENDANTS-APPELLANTS.—267 S.W. (2) 54.

Springfield Court of Appeals. Opinion delivered April 7, 1954.

*Breuer & Northern* for Appellant.

*David E. Horn,* for Respondent.

McDOWELL, P. J.—This appeal is from a judgment of the Circuit Court of Dent County, Missouri, reversing an order made by the Industrial Commission of Missouri, denying compensation to claimant on the ground that claimant was a farmer and that his employer had not, at the time of accident, elected to accept and include thereunder employments of farm labor and, therefore, the Commission was without jurisdiction in this cause.

A report of injury of claimant, John McCaleb, was filed with the Division of Workmen's Compensation, Department of Labor and Industrial Relations of Missouri, October 19, 1951, signed by Vesta L. Greer, stating that John McCaleb had been injured in an accident October 13, 1951. This report listed the insurer as "The Travelers Insurance Company" and the business of the employer as real estate broker.

On November 23, 1951, claimant, John McCaleb, filed with the Commission his claim for compensation for injuries sustained on a

farm in Dent County. He stated he was on a supervisory which he made about twice monthly to look over hogs and stock and give instructions to part time or casual helpers and to take feed to hogs; that while he was turning away from watching hogs feed, stepped backward into a pile of lumber, catching foot therein, leg doubled back under him as he fell; that his right leg was broken in three places.

Answer was filed by Mrs. Vesta L. Greer, employer, and The Travelers Indemnity Company, insurer, denying that the injury is within the jurisdiction of the Workmen's Compensation Commission for the reason that employee was engaged in farm labor and the employer had not filed an acceptance of the act in that respect.

On April 15, 1952, the cause was heard by the Referee of the Division of Workmen's Compensation and award made in favor of claimant for temporary or partial compensation against the employer and the insurer. This award was made June 4, 1952. The referee, at this hearing, found that Vesta L. Greer was a minor employer who had accepted the provisions of the Missouri Workmen's Compensation law prior to October 13, 1951; that John McCaleb was an employee of Vesta L. Greer and working under the provisions of the Missouri Workmen's Compensation law on October 13, 1951, and that he was not engaged in farm labor.

June 6, 1952, the Travelers Indemnity Company filed an application for review to the Industrial Commission of Missouri by the full Commission. In this application for review the insurer stated ''that the award is not according to the law and the evidence as set forth in Section 287.090 R. S. Mo. 1949 and no election had been filed at time of accident regarding farm operations''.

On September 4, 1952, a final award was made by the Industrial Commission of Missouri reversing on review the award dated June 4, 1952, and denying compensation. In this award the Commission made the following finding:

''We find from all the evidence that Vesta L. Greer, employer herein, was a minor employer operating under the provisions of the Missouri Workmen's Compensation Law but had not, at the time of the accident herein, elected to accept and include thereunder employments of farm labor, as provided by Sections 287.090-1 (2) and 287.090-2, R. S. Mo. 1949.

''We further find that John McCaleb, employee herein, was engaged in farm labor at the time of his accidental injury and that the Industrial Commission of Missouri, therefore, is without jurisdiction in this cause. Compensation, therefore, must be and the same is hereby denied.''

The cause was appealed to the Circuit Court of Dent County, September 23, 1952, and judgment rendered May 18, 1953, as follows:

"Court finds that the final award of the Commission should be reversed and set aside, and cause remanded to the Commission for further determination not inconsistent with this finding."

From his judgment the cause was appealed to this court.

Two questions are presented to the court for decision. First, was claimant engaged in farm labor at the time of injury:

Secondly, did the election of Vesta L. Greer, as minor employer made December 23, 1943, to come under the Workmen's Compensation law extend its coverage to claimant without regard as to whether he was engaged in farm labor at the time of his injury:

The facts are undisputed. John McCaleb is a resident of St. Louis. October 13, 1951, he was an employee of Vesta L. Greer for whom he had worked twenty years. He was first a chauffeur and about 1937 he became a manager and supervised all the work in buying and selling of property and appraised property for his employer in St. Louis.

Mrs. Vesta L. Greer was engaged in the real estate business, speculation in real estate, real estate broker and guest home operations on October 13, 1951. She testified that McCaleb's duties were numerous. General supervision and management and estimating; that when she purchased a building to be rehabilitated claimant would estimate the amount of work and cost and general operations and that he exercised general supervision of guest homes, hired and fired the help, saw to their work and saw to the general repairs of all property she handled, not only rooming houses but all property. She stated she operated pretty well all over the state of Missouri and that claimant's work was supervisory and managerial.

Mrs. Greer testified that she purchased approximately 400 acres of land in Dent County; that there were two different tracts adjoining; that she acquired the first tract in June, 1950, and the second in January, 1951. She stated she acquired this land as a speculation; that no one lived on it during her ownership; that there was a habitable building on it. As to claimant's duties with the Dent County land she stated: "A. He would decide what fencing was necessary, what other work was necessary. He would engage the men and pay the men and then late in '51 he put a few head of hogs and a little stock down there, and he engaged the man to see to feeding them, and he would see that there was sufficient feed or he would instruct different men to order feed and he would pay this man, I would give him money and he would pay all the bills, he would buy wire, he would arrange for fencing property. It is cut and stretched. He had two tracts surveyed.* * *"

The witness stated that she acquired this property in connection with real estate business. She also stated that at no time did she ever employ more than ten employees, always less than ten; that she elected to come under the provisions of the Missouri Workmen's

Compensation law about 1944 and posted notices in her office of such election. She stated she treated all of her business dealings as one business, operating in the name of "Vesta L. Greer".

As to claimant's duties, he stated: "A. I hired people to work for her. I supervised all of the work concerning the apartments and the guest homes, and if she needed any material bought for anything I would get the money and buy that and report back to her what had been accomplished."

He stated that his duties consisted not only in hiring the people who worked for her but in supervising their work. He testified that Mrs. Greer acquired 400 acres of land in Dent County. As to his duties he said: "A. My job was to go down and supervise anything that might be needed to be done and hire men to do that, and after they had done the work pay them for whatever they had done, and see that Mrs. Greer's instructions were carried out."

He testified that Mrs. Greer was having fencing done and had a small amount of stock down there and he had to go down and pay the men for the fencing and see how they were getting along with the work and see if the stock was taken care of. He stated that he employed one, Ed Asher, to do the fencing. He testified there were possibly 50 head of hogs, 5 head of cattle, 3 horses and 1 mule; that Leonard Martin had been employed to care for them. He testified he went down Friday afternoon, October 12th, to the farm; that one, Mr. Livingston, went with him just for the ride; that he got to the farm about 8 o'clock; that he took food to the house on the farm, prepared and ate and retired that night; that on the 13th, the following day, he ate his breakfast and began his duties, which were to see the hogs and cattle and everything that was on the place; that he went over to Mr. Asher's and talked to him concerning work that should be done. He stated while there he paid Mr. Asher for what work he and the men had done and discussed the unfinished work, the work to be done the following week. He testified after he talked to Asher he came back across the field to see if he could see the hogs and cattle and if they were alright and then came back to where he stayed. He said by that time it was getting late and he was preparing to come back home. He gave this answer: "A. * * * I was walking around out there, I guess we call it the field, the pasture, and I was standing over there thinking of my duties to see if we had all hires and everything made and see if I had completed all I came down there to do."

He said immediately prior to his injury, he was standing still on a slope; that the ground is rolling down there; that he was thinking about completing his work, the fencing and all those things. He gave this answer: "A. I was reviewing in my mind whether I had taken care of paying the men, secured hiring and sufficient money that they might go on with the work, saw after the stock see if all right,

just making a summary in my mind to see whether I had taken care of everything I had come down to do.''

Then he stated: ''A. I was getting ready to leave and slipped on a little rock under me and sticking up, fell, got tangled up in a little pile of lumber, and came out with a broken leg.''

On cross-examination, claimant testified:

''Q. Now, Mr. McCaleb, how many times had you been down to this farm? A. I don't know, sir, how many times. Quite a few times.

''Q. And, each time you went down did you do about the same thing? A. About the same.''

He testified he consulted Mr. Asher about building the fence, paid him for what he had done. He testified that the fence posts were cut from the place; that the woven wire was purchased in St. Louis and he brought it to the place; that the last time he was down there he checked the feed for the stock. When asked as to the feed for the hogs and cattle he stated that he sometimes brought it, if driving down in a truck, other times he ordered men working for him to purchase it; that he sometimes threw out corn for the hogs to see if they were all there, but, as for feeding them, he had a man to do that; that he did no work on the farm. He stated the truck he drove down was his own. He gave this testimony:

''Q. Did you say you went down there about once a week? A. I imagine it averaged about once a week.

''Q. What else does your work consist of in St. Louis? A. My work? Just management, supervision.

''Q. You don't do any carpenter work nor paper hanging? A. Not myself, I hire it done.

''Q. You don't do any laboring work at all? A. No, sir.

''Q. Did you have any duties outside of St. Louis until she bought this farm? A. No, sir.''

He stated he usually went down to the farm on week ends, sometimes he would stay all night and other times go back home the same day. He testified:

''Q. Now, you would bring this feed out to the farm, what would you do with it? A. We had containers to put it in. Pick up feed and put feed in containers for the man so he would have it to feed the hogs with.''

He testified that hay purchased for the cattle was delivered on the farm by others. However, he stated he bought the hay that was used. He gave this testimony:

''Q. This hog food, when you took down a truck load, what did you do with it? A. Set it inside the building onto the building, and when the man would come he would empty it all up, empty containers, had barrels and things to put it in.

''Q. All you would do—A. Set it off the truck and set it in there.

"Q. Now, while you were down there you walked over the place, too, is that right? A. Yes, sir.

"Q. What did you do about checking all these hogs? Know how many there were supposed to be? A. I knew how many there were supposed to be there, but this day not all were there so that is why I walked around to see where they were.

"Q. Did you look at the fence this fellow put up? A. I looked at part of it."

The witness said on the day of the accident he threw out some corn for the hogs to see if they were all there, but feeding 50 head of hogs meant more than throwing out a few ears. He gave this testimony:

"Q. Did you feed them every day? A. Yes, sir."

As to where the hogs feed came from he testified:

"A. I went according to how we found prices were going. Some times I would take it from St. Louis. If I saw a better buy in Potosi I would buy it up there or some times I would go into Salem and buy it there."

He gave this testimony as to his work before the purchase of the farm. "A. I managed and supervised all the works in buying and selling of property and appraised property for her."

He stated this work was in St. Louis. Then he gave this testimony:

"Q. Now, anything you took down there as fencing or feed or anything like that, was for the use on the farm there? A. Yes, sir.

"Q. That would not have anything to do with the real estate business here in St. Louis? A. No, sir."

Claimant's exhibit (B) is a certified copy of exempted employer's acceptance of law. Under sub-section 5, the employer's business is stated: "Guest Homes or rooming house operator and owner."

Sub-section 6. "Average number of employees regularly employed. Six."

Under 7: "Nature of work of Employees. Maintenance man and maids."

On second page, Form 67, the date of acceptance was shown as January 4, 1944.

Mrs. Greer, on cross-examination, testified that this was the first farm she had purchased for herself. She testified that she only filed one acceptance in 1944.

Section 287.490 R. S. Mo. 1949 provides:

"* * * The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

"1. That the commission acted without or in excess of its powers;

"2. That the award was procured by fraud;

"3. That the facts found by the commission do not support the award;

"4. That there was not sufficient competent evidence in the record to warrant the making of the award. * * *"

In Ossery v. Burger-Baird Engraving Co., Mo. Sup., 256 S. W. 2d 805, 808, the duty of the court on appeal is stated as follows:

"The findings, rulings and award of the referee, Section 287.460 R. S. Mo. 1949, V.A.M.S., as well as the final award of the commission, Sec. 287.480, are among the factors to be considered upon judicial review, Sec. 287.490, in determining whether the final award of the commission is supported by substantial evidence upon the whole record. Michler v. Krey Pkg. Co., Mo. Sup., 253 S. W. 2d 136, 140 stating: 'It is the award of the Commission that is reviewed by the Courts and not the award of the referee.' Consult Douglas v. St. Joseph Lead Co., Mo. App., 231 S. W. 2d 258, 261 (3,4); Diebold v. Great Atl. & Pac. Tea Co., Mo. App., 241 S. W. 2d 31, 33 (2,3). Awards of the commission are set aside only when clearly contrary to the overwhelming weight of the evidence. Courts do not substitute their judgment for that of the commission when supported by competent and substantial evidence upon the whole record. Michler v. Krey Pkg. Co., Mo. 253 S. W. 2d 136, 141 (6); Karch v. Empire Dist. El. Co. 358 Mo. 1062, 218 S. W. 2d 765, 769 (3); Scott v. Wheelock Bros. Inc., 357 Mo. 480, 209 S. W. 2d, 149, 151 (3,4)." Demay v. Liberty Foundry Co., et al., Mo. Sup. 37 S. W. 2d, 640; Hendrickson v. Riss & Co., Inc., Mo. App. 104 S. W. 2d, 1046.

In Becherer v. Curtiss-Wright Corporation, et al., Mo. App., 194 S. W. 2d 740, 743, the following statement of law is made:

"* * *The testimony, viewed, as it must be, in the light most favorable to defendants, amply supports the finding of the commission that plaintiff did not sustain an accident arising out of and in the course of her employment. It is well established law that an award of the compensation commission, in the absence of fraud, is conclusive on appeal, if supported by substantial evidence. Smith v. General Motors Corp., Mo. Sup. 189 S. W. 2d 259; Vogt v. Ford Motor Co., Mo. App., 138 S. W. 2d 684; Deister v. Thompson, 352 Mo. 871, 180 S. W. 2d 15; Hunt v. Jeffries, 236 Mo. App., 476, 156 S. W. 2d 23." Stephens v. Spuck, Mo. App., 214 S. W. 2d 534; Mayer v. Dohrmann, Mo. App., 199 S. W. 2d 877; Harper v. Home Imp., Mo. Sup., 235 S. W. 2d 558; Schmidt v. Rice-O'Neill, Mo. App., 226 S. W. 2d 358.

In Wilkerson v. Potashnick, Mo. App., 226 S. W. 2d, 402, this court held that the burden of proof is upon the party claiming the applicability of the act to bring himself under it. Kemper v. Gluck, 327 Mo. 733, 39 S. W. 2d 330, 333.

In DeMay v. Liberty Foundry Co. et al., supra, the Supreme Court held that the findings of fact by compensation commission made conclusive have effect of verdict of jury.

This same ruling was followed by the Kansas City Court of Appeals in Carter v. Priebe & Sons et al., Mo. App., 77 S. W. 2d 171.

We think the law is well settled and is clearly stated in the authorities above cited that it is the duty of this court on appeal to consider the findings, rulings and award of the referee as well as the final award of the commission upon judicial review in determining whether the final award of the commission is supported by substantial evidence upon the whole record. It is the award of the commission that is reviewed and not the award of the referee. We will set aside the award of the commission only when it is clearly contrary to the overwhelming weight of the evidence. The court will not substitute its judgment for that of the commission when supported by competent and substantial evidence upon the whole record. The burden of proof is upon the claimant to show that he is entitled to recover under the act. In the absence of fraud, the commission's findings of fact are conclusive and binding.

We agree with appellants' declaration of law cited under point I of their points and authorities.

The same is true as to the abstract propositions of law stated in point II of appellants' brief. The same contention is made under point II that was made under point I with the possible exception that under point II, appellants make the following statement of law: "On Appeal, Court will view evidence in light most favorable to successful party below" citing Harper v. Home Imp., Mo. Sup. 235 S. W. 2d 558, and then stating the following proposition of law, "Court will look only to evidence most favorable to award, together with all reasonable inferences that may be drawn therefrom, that seem to support the award and will disregard all opposing and unfavorable evidence", citing Schmidt v. Rice-O'Neill, Mo. App. 226 S. W. 2d 358.

We think it unnecessary to cite more authorities on these propositions of law and we fully agree with the holdings therein. However, these points are merely abstract statements of law.

Under appellants' assignment III, the real questions or issues in the case are stated. First, was claimant engaged in farm labor at the time he sustained his injury as found by the Industrial Commission?

Our attention is called to Plemmons v. Pevely Dairy, Mo. Apps., 233 S. W. 2d 426. The facts in this case are not the same as in the case at bar but we think the court stated the proper rule of law on page 428 of its opinion. We quote:

"We find no cases in Missouri in point, but a review of the cases from other states construing similar acts leads us to the conclusion that appellant's contention must be sustained. Those cases hold that it is the character of the work itself, and not the business of the employer, that is determinative. In the case at bar, Rowden was employed on a farm and it was stipulated that his duties were: 'the care and breeding of cows on the farm, particularly the care of

dry cows, care of such cows when calving, care of the calves, in barns and fields, the mixing of feed, and the feeding of dry cows and calves'. Clearly, these duties were those of farm labor.''

The court reviews authorities from other states which follow the rule herein stated. On page 429 of the opinion the court, quoting from Keeney v. Beasman, 169 Md. 582, 182 A. 566, says:

''* * * * * ' * * * ''Farm laborers'', * * * shall mean any employees who, at the time of the accident, are engaged in rendering any agricultural service, including the threshing or harvesting of crops, or who, at the time of the accident, are engaged in service incidental to and in connection with agricultural pursuits or developments, whether the employer be the farmer or other person undertaking or contracting with the farm to perform any such agricultural service, pursuit 'or development.' * * *''

The opinion, quoting from definitions from different dictionaries, stated that agriculture has a meaning broader that mere tilling of the soil. The meaning is synonymous with husbandry, that it includes not only the cultivation of the soil and raising of crops, but also the gathering of crops and raising of live stock.

On page 431 of the opinion, the court, quoting from Ginn v. Forest Nursery Co., 165 Tenn. 9, 52 S. W. 2d 141, stated:

'' 'We think a sound general rule may be taken from the opinion in Dowery v. State, 84 Ind. App., 37, 149 N. E. 922, 923, wherein it was said: ''It is to be observed that the statute does not classify the employee in accordance with the '' ' ''general occupation or business of the employer. Whether a laborer is or is not a farm employee is determined from the character of the work he is required to perform.'' This rule is properly interpreted in Peterson v. Farmers' State Bank; 180 Minn. 40, 230 N. W. 124, by the holding: ''Neither the pending task nor the place where it is being performed is the test. The whole character of the employment must be looked to, to determine whether he is a farm laborer. That is what is meant by the statement that it is 'the character of the work which the employee is hired to perform, which is the test of whether the employee is a farm laborer.' '' These propositions are supported by many cases.' ''

Since the opinion of the St. Louis Court of Appeals in Plemmons v. Pevely Dairy Co., supra, the Supreme Court has passed upon the question in issue in Cloughly v. Equity Mut. Ins. Co., Mo. Sup. 243 S. W. 2d 961, 964, 965. In the opinion the court said:

''* * *The sole questions now for our determination are: Could the jury have reasonably inferred from this evidence that the purpose and intent of Swantner's work was to take the material from the building and truck it to the farm that such material could be used thereon for farm purposes? And, if the above could be inferred, could the jury also infer that such work was incident or appurtenant

to or connected with the farm operations? * * * In considering whether plaintiff's evidence made a case for the jury we must consider all the evidence in the light most favorable to plaintiff, and give him all the reasonable favorable inferences which may be drawn therefrom. * * *

"Without restating all the facts above noted, it is our conclusion that, from the evidence before them, the jury could reasonably have inferred and found that the intent and purpose of plaintiff in having Swantner do that work was that certain material therein be removed from the building and trucked to the farm solely for use on the farm for farm purposes; and, the jury could further have inferred and found that the work Swantner was doing was no part of the work which Wright had contracted to do to prepare Cloughly's building for the tenancy of the Rubber Company. * * *

"Coleman v. Bartholomew, 175 App. Div. 122, 161 N. Y. S. 560, 561 (2), held a farm laborer, injured while temporarily employed to repair the roof on defendant's barn, was engaged in work incidental to the operation of the farm and a 'farm laborer', and was thus excluded from the benefits of the Workmen's Compensation Law, McK. Consol. Laws, c. 67. To like effect are Culpepper v. While, 52 Ga. App. 740, 184 S. E. 349, where the employee was injured while digging a ditch on his employer's farm to make the land more suitable for cultivation; and Powell v. Industrial Comm. of Wis., 193 Wis. 38, 213 N. W. 651, where a farm laborer was injured while sawing wood on the farm of another for use as firewood in the house thereon, in consideration of the occupant agreeing to assist the employer in bailing hay.

"Klein v. McCleary, 154 Minn. 498, 192 N. W. 106, 107, is cited to the point that Swantner's calling or usual occupation is not the test, but rather the nature and character and purpose of his work. The case mentions that a carpenter may become farm laborer for the time being and a farm laborer may become a carpenter for the time being. Consult Peterson v. Farmers' State Bank, 180 Minn. 40, 230 N. W. 124, 125. Plemmons v. Pevely Dairy Co., Mo. App., 233 S. W. 2d 426, 431, quotes with approval Ginn v. Forest Nursery Co., 165 Tenn. 9, 52 S. W. 2d 141, stating: 'Whether a laborer is or is not a farm employee is determined from the *character* of the work he is required to perform.' "

The Supreme Court, in the above case cited, said there were two seemingly contrary lines of authority as represented by cases from other jurisdiction which seemed to be in hopeless conflict and then the court makes this statement on page 965:

"* * * None of the briefs cite us to any Missouri cases which either party contends is authoritative upon the instant facts. * * *

"It may be first observed that the test which must be applied is, could a jury reasonably infer that Swantner was reasonably engaged

in the general business covered by the policy, "or was his work incident to or connected with the operation of plaintiff's farm. In applying that test it must be kept in mind that under this policy it is the character and purpose of the work Swantner performed, and neither the place of its performance nor the previous calling of the performer, that is determinative.

"There was but one purpose to the work that Schrage and Swantner were doing. That purpose centered in plaintiff's farm operations and determined the character of the work. * * *

"* * * Such connection, in law, may not be remote or fanciful, but must be factual and real. * * *

"* * * And likewise, Swantner, while working in the St Louis building salvaging material for the sole purpose of removing it to plaintiff's farm for use thereon in plaintiff's farm operations was doing work directly connected with and incident to plaintiff's farm operations. * * *

We have examined the authorities cited by both appellants and respondent and, as stated by the supreme court, in Cloughly v. Equity Mut. Ins. Co., supra, at page 965, there seems to be two seemingly contrary lines of authority which cannot be reconciled. We must follow the law as last decided by our Supreme Court and we think that that rule of law is definitely stated in the above cited case as follows on page 965:

"It may be first observed that the test which must be applied is, could a jury reasonably infer that Swantner was reasonably engaged in the general business covered by the policy, or, was his work incident to or connected with the operation of plaintiff's farm. In applying that test it must be kept in mind that under this policy it is the character and purpose of the work Swantner performed, and neither the place of its performance nor the previous calling of the performer, that is determinative."

The court cites, with approval, the rule of law laid down in Klein v. McCleary, supra, that it is not the calling or usual occupation that is the test but rather the nature and character and purpose of the work and then cites with approval his rule:

"'Whether a laborer is or is not a farm employee is determined from the *character* of the work he is required to perform.'"

Thus, we believe that the rules herein set out are the law in Missouri and must govern in determining whether or not claimant in the case at bar was engaged in farm work or as a farm laborer at the time of his injury. The fact that Vesta L. Greer, the employer, was engaged in the real estate business in St. Louis is not a determining factor in this case nor is it a determining factor that, prior to the acquiring of the farms in Dent County, claimant had been employed by Vesta L. Greer as a chauffeur and then a general manager seeing after her investments in St. Louis. The controlling principle in this

case must be, was claimant engaged in doing such acts at the time of his injury that are usually performed in the operation of farms? Was the work claimant was engaged in being done for the sole purpose of carrying on farm operations? Was such work directly connected with and incident to the farm operations carried on by Vesta L. Greer? If Vesta L. Greer had not purchased and operated the farm in Dent County, it would appear that claimant would not have been employed to oversee and carry out Vesta L. Greer's instructions connected with the operation of such farm. The testimony is undisputed that this 400 acres of land was acquired in June 1950 and a part in January 1951; that it had a habitable building wherein operators of the land might live but no one was in the building or used it except this claimant, when he came to the farm to oversee and direct the operations thereof.

Claimant testified, on cross-examination, that he came from St. Louis, generally in his truck, to attend to the business of directing the farm operations on an average of once a week. That at the time of injury he came down on the 12th of October, accompanied by a friend, who merely came along for the ride. He stated that he had certain things to do, among which was to see about fencing. He stated he had employed men to fence the farm and that this work had not been completed. He stated there were 50 head of hogs, 5 head of cattle, 3 horses and 1 mule on the farm; that he was seeing about the necessary feed for the stock. He testified that sometimes he brought hog feed from St. Louis, sometimes he purchased it at Potosi and sometimes he would go to Salem to get it, depending on where he could buy it the cheapest; that he hauled this feed in his truck on the different occasions and placed it on the farm in containers so that the men could feed the stock. It seems to the court that this was purely services being performed by claimant connected only with farm work and farm labor. He testified that he employed men to build the fence but that he purchased the wire and hauled it to the farm. He testified he employed a man to feed the hogs but that often in determining if the hogs were all there he would throw out corn to them. In other words, this was work of looking after farm stock and there could have been no other purpose in such work. On the morning he was injured, to-wit, October 13th, he testified he had stayed all night in the house, ate his breakfast and then went out to begin his duties. We quote his answer: "Got up, ate breakfast and went out to begin my duties. Were to see the hogs and cattle and everything that was on the place and then go on over to Mr. Asher's and talk to him concerning work that should be done".

He testified he did go over to Mr. Asher's place, talked to him about the fencing, paid him for work that he and the other men had done on this farm and talked about work to be done on the unfinished fence the following week. He then stated he came back across the

field to see if he could see the hogs and cattle and to the place where he was staying; that at the time of his injury he was walking around in the field or pasture, thinking of his duties to see if he had all hires and everything made and had completed the work he was to do down there. He said he was just making a summary in his mind to see whether he had taken care of everything he had come down there to do and that he slipped on a rock, got tangled up in lumber and fell and broke his leg.

We hold that under the law as laid down by the Supreme Court in this state, as cited, there was but one purpose to the work that claimant was doing; that purpose centered in Vesta L. Greer's farm operations. The overseeing of the building of fences, the having the land surveyed, the placing on the farm of live stock, the buying and hauling of feed to the farm and storing it thereon for the stock, the employment of farm labor to take care of the same and the actual participation of claimant in going out and looking after the stock, counting them to see if they were all there, could have no other purpose than to directly aid and assist in this farm operation. This work that claimant was doing at the time of his injury was directly connected with and incident to the operation of his employer's farm. We find there was substantial evidence to support the finding of the Industrial Commission that claimant, John McCaleb, was engaged in farm labor at the time of his accidental injury.

The next question presented to the court was, Was Vesta L. Greer, a minor employer, operating under the Workmen's Compensation law, and had she elected to accept and include thereunder employment of farm labor?

Under point III of respondent's brief, he states:

"Finally, it is claimant's position that even though it be conceded (for argument only) that he was a farm laborer, he was covered by the Compensation act by reason of Mrs. Greer's election of date of December 23, 1943, to come under the Act as a minor employer."

Section 287.090 R. S. Mo. 1949 entitled "Employments not subject to law—election to come within law"

"Sections 287.050 to 287. 080 and 287.120 of this chapter shall not apply to any of the following employments:
* * * "(2) Employments of farm labor and domestic servants including family chauffeurs; * * *

"(5) 2. Any employer in this section exempted from the operation of sections 287.050 to 287.080 and 287.120 of this chapter may bring himself within the provisions of this chapter by filing with the commission notice of this election to accept the same, and by keeping posted in a conspicuous place on his premises a notice thereof to be furnished by the commission, and any employee entering the services of such employer and any "employee remaining in such service thirty days after the posting of such notice shall be conclusively pre-

sumed to have elected to accept this chapter unless he shall have filed with the commission and his employer a written notice that he elects to reject this chapter.''

Claimant offered in evidence exhibit (B), which is a certified copy of ''Exempted Employer's Acceptance of Law'', by Vesta L. Greer. This exhibit provides that it is to be used only by employers with fewer than eleven employees or by those whose employments are specifically exempted by the law. It is dated as received 1-4-44. It provides that all blanks shall be filled in and there are 11 blanks which are filled in as follows:

''1. Employer's name. Mrs. Vesta L. Greer.

''2. Employer's principal address 5026 Washington Blvd. St. Louis, Missouri.

'' * * *

''4. State whether individual, corporation, partnership or common-law trust. Individual.

''5. Nature of employer's business. Guest Homes or rooming house operator and owner.

''6. Average number of employees regularly employed. Six.

''7. Nature of work of employees. Maintenance man and maids.

''8. Name and address of insurance carrier. The Travelers Indemnity Company, Hartford, Conn.

''9. The undersigned employer hereby gives notice that said employer hereby accepts the Missouri Workmen's Compensation Law.

''10. Number of printed notices hereof desired. Five.

''11. Date. December 23, 1943.''

This document was signed by Mrs. Vesta L. Greer.

At the time of this acceptance to come under the Workmen's Compensation law by Mrs. Vesta L. Greer, she was not engaged in farming. There were no notices of such acceptance ever posted at the farm or about the premises of said farm. However, the evidence does show that a notice of election to come under the law was posted in the employer's office in St. Louis.

It is the contention of respondent that the statute does not require a minor employer to elect twice to bring both farm labor and other labor under the act or to elect specifically as to which of his employees shall be covered.

Respondent points out that under the statute it is specifically provided that an employer may bring himself within the provisions of the chapter by filing with the commission notice of his election to accept the same, and by keeping posted in a conspicuous place on his premises a notice thereof to be furnished by the commission, and any employee entering the service of such employer and any employee remaining in such service thirty days after the posting of such notice shall be conclusively presumed to have elected to accept this chapter

unless he shall have filed with the commission and his employer a written notice that he elects to reject this chapter.

To support this contention respondent cites Hilse v. Cameron, Joyce Const. Co. et al, Mo. App., 194 S. W. 2d 760, 765, which states the law:

"* * * This was also in accordance with the rule that it is the duty of the commission, as well as of the courts, to construe the Compensation Act with a liability calculated to effectuate its purpose and so as to extend its benefits to the largest possible class and restrict those excluded to the smallest possible class. * * *"

Respondent cites Smith v. Grace, Mo. App., 159 S. W. 2d 383. Here the court was determining whether or not the employer was a major employer and what employees should be counted in determining if he were a major employer and if they should count employees whether employed on the premises or elsewhere so long as they were employed on premises where the principal contractor is doing work. The court made this statement of law on page 388:

"* * * Sec. 3764, R. S. Mo. 1939, which provides that all provisions of the Act shall be liberally construed with a view to the public welfare, and would be in conflict with those cases construing said section, which hold that any doubt respecting "the right to compensation should be resolved in favor of the employee. * * *"

Respondent cites Holmes v. Freeman, Mo. App., 150 S. W. 2d 557, 560, which states the following law:

"* * * Furthermore, if there is doubt as to respondent's right to recover compensation, such doubt must be resolved in favor of the employee. * * *"

There is no question but what these cases state the law. We agree with respondent that the compensation law, itself, commands us to give all of its provisions a liberal construction.

It is the contention of appellants that while the employer herein was operating under the provisions of the Workmen's Compensation law, she had not, at the time, elected to accept and include thereunder employments of farm labor as provided by law.

No authority is cited to cover facts as shown in this case. Here, a minor employer states her business as that of operating guest homes or rooming house operations and that the work of the employees is that of maintenance man and maids in her acceptance of the law. She states in this acceptance the name of the insurer. In the policy of insurance it is provided: "Buildings N.O.C.—operation by owner or lessee—including care, custody and maintenance of premises, the operation of elevators or heating, lighting or power apparatus,—(Maintenance or repair work at any location where such owner or lessee does not also perform janitorial services; operation or maintenance of amusement devices to be separately rated)", and for "Clerical Office Employees N.O.C."

Under item 5 of the policy it is provided: "This Employer is conducting no other business operations at this or any other location not herein disclosed—except as herein stated." This insurance policy is in evidence as exhibit (B).

In construing the statute section 287.090 R. S. Mo. 1949, it will be noted that those employments which are excluded from the operation of the statute, unless an election to come within the law is made, or divided into five separate categories, section 2 under this statute exempts employment of farm labor, etc.

An examination of the acceptance filed by Vesta L. Greer herein reveals that she specifically states the kind of labor she expects to bring in under the law by her acceptance of the act. It says nothing about farm labor. In fact, Vesta L. Greer owned no farm land in 1944 and the evidence clearly shows that all of her business pertained to property in St. Louis. Her insurance policy specifically states that "This Employer is conducting no other business operations at this or any other location not herein disclosed—except as herein stated". Therefore, in construing the acceptance under the act herein we hold that there was no acceptance as to farm labor and affirm the findings of the industrial Commission on that matter.

Judgment of the trial court is reversed. Cause remanded with directions to reinstate the award of the Industrial Commission finding for appellant.

*Blair* and *Stone, JJ.,* concur.