L. B. DAVIS, Claimant, Respondent,

v.

Paul McKINNEY, Alleged Employer, and Truck Insurance Exchange, Insurer, Appellants.

Nos. 7563, 7565.

Springfield Court of Appeals.

Missouri.

May 29, 1957.

Mann, Walter, Powell & Burkart, Allen, Woolsey & Fisher, Springfield, for appellants.

Bill Davenport, Ozark, for respondent.

STONE, Judge.

While L. B. Davis (hereinafter sometimes called claimant) was castrating a bull calf on Friday, September 17, 1954, in the barn on a 167-acre farm owned by Paul and Mildred McKinney and located about two miles south of Highlandville in Christian County, Missouri, the calf kicked the knife into claimant's left hand inflicting a wound which became infected and eventually resulted in about fifty per cent permanent partial disability in claimant's left and minor arm at the shoulder. Davis' claim against Paul McKinney, as alleged employer, and Truck Insurance Exchange, his insurer, for benefits under the Missouri Workmen's Compensation Law [Chapter 287] was denied by the referee because "at the time of the alleged accident employee (claimant) was engaged in farm labor" and McKinney had not elected to bring himself within the law by complying with Section 287.090. (All statutory references are to RSMo 1949, V.A.M.S.) The Industrial Commission likewise denied compensation for the same reason; but, on claimant's appeal to the circuit court, the cause was reversed and remanded to the Commission. The alleged employer and his insurer have taken separate appeals (here consolidated) from that judgment of the circuit court.

We emphasize at the outset that, although on judicial review the courts are authorized to determine whether, upon the entire record, the Industrial Commission reasonably could have made the findings and award under consideration, this does not mean that either the circuit or the appellate court should substitute its own judgment on the evidence for that of the Commission; but, on the contrary, the reviewing court may set aside the findings and award of the Commission only if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and award. Garrison v. Campbell "66" Express, Inc., Mo.App., 297 S.W.2d 22, 30(8), and cases there cited. Our statement of the facts gives required recognition to that principle.

Paul McKinney, the alleged employer, was engaged in three enterprises at the time

of claimant's injury, i. e., (1) operation of the 167-acre farm owned by himself and his wife, (2) operation of a sale barn on that farm, and (3) operation of the Acme Glass Company in Springfield, Missouri, owned by Paul and Ralph, his brother, as partners, to whom Truck Insurance Exchange had issued a "standard workmen's compensation and employers' liability policy." The record indisputably shows that these three enterprises were conducted separately, and that all receipts from each enterprise were deposited in, and all expenses incident to such enterprise were paid from, a separate bank account maintained for that particular enterprise.

Paul testified, without contradiction, that the 167-acre farm was both a grain and a stock farm, that "a certain portion" of his income was derived "from selling cattle and raising stock in the usual farming process," and that "we have milked several cows from time to time." The sale barn operation was conducted in a large barn on the 167-acre farm. Only "about fifteen per cent" of the barn was used for this purpose; with the remainder used for "just regular farming operation." Paul kept "some personal stock" and riding horses there. At livestock sales cried by auctioneers in this barn on Saturdays (but on no other day of the week) during the period from August, 1954, to January, 1955, stock was sold "on commission" for others —"that is the purpose of operating a sales barn." Paul sometimes bought or sold cattle at these sales; but, when he did, he "operated just the same as any private individual"—"the sale barn paid me for any cattle that I sold and when I bought cattle at the sale I wrote a check on my personal account payable to the sale barn just the same as anyone else would do." Paul's personal (farm) bank account was maintained in the Ozark Bank at Ozark, Missouri. The sale barn operation was conducted as Hiland Sale Barn, and the bank account for that enterprise was maintained in the same name in the Farmers and Merchants Bank in Springfield.

By check on his personal (farm) bank account, Paul bought about twenty head of cattle at the Union Stock Yards in Springfield on Thursday, September 16, 1954. "These cattle at no time * * * belonged to the Hiland Sale Barn." Paul intended to sell "part of them" (including four bull calves, one of which claimant was castrating at the time of his injury) at the sale to be conducted on Saturday, September 18, 1954; but, when the case was heard by the referee on July 28, 1955, Paul still owned one of the heifers purchased at the stock yards. Only about five per cent of the livestock auctioned at Hiland Sale Barn on Saturday, September 18, 1954, was owned by Paul, with about ninety-five per cent of the sales that day being "commission business" for others.

The evidence was sharply conflicting and wholly irreconcilable as to why claimant, who lived in Highlandville, came to the McKinney farm on the morning of Friday, September 17, 1954. Viewed in the light most favorable to the award, the record shows that, prior to the date of his injury, claimant had been employed by Paul only in putting up oats and in fencing; that claimant's last employment in such farm work had been some two or three weeks previously; and, that claimant did not come to the McKinney farm on September 17th by prearrangement or pursuant to request, but simply because "he was logging" on the McKinney farm, i. e., cutting some walnut logs "on shares." In any event, Paul frankly stated that, when he saw claimant at the McKinney farm home on the morning of September 17th, he (Paul) asked claimant to castrate the four bull calves in the barn, furnished him with a rope to tie them, and authorized him to use Mrs. McKinney's automobile "to run down home and get his knife."

Claimant, who was "sort of an expert" at castrating bull calves, usually carried a knife suitable for proficient practice of that art. His castration of other bulls for Paul "on several occasions" always had been per-

formed (so Paul averred) without monetary remuneration and as "a common favor" to Paul, albeit not to the bulls. Notwithstanding Paul's insistence that claimant's castration of the four calves on September 17, 1954, likewise "was just a simple occurrence" (again from the standpoint of the human actors but not the surgical subjects) for which claimant neither sought nor received compensation, we assume for the purposes of this opinion that there was an employer-employee relationship between Paul and claimant at the time of the latter's injury, and we accept the questionable finding of the Commission that Paul was a major employer in the operation of the sale barn. The determinative question remains as to whether claimant was engaged in farm labor at the time of his injury and thus was without the coverage of the Compensation Law, there being no suggestion that Paul had elected to bring himself within the Law as to farm labor. See Section 287.090.

■■ It is settled that whether an employee is or is not engaged in farm labor is to be determined from the character of work he is required to perform.[1] We recognize that, in proper interpretation and application of that principle: "Neither the pending task nor the place where it is being performed is the test. The whole character of the employment must be looked to to determine whether he is a farm laborer."[2] However, it is equally clear that an employer may be engaged in two or more enterprises, with the employments in one enterprise being without the Compensation Law but with the employments in the other enterprises being within the Law.[3]

■ Under some circumstances and in some employments, the care of livestock is not farm labor;[4] and, if instant claimant's work at the time of his injury had been in connection with the sale barn operation, regarded by Paul as "a business enterprise" rather than a "farm operation," it may be conceded that claimant would have been under the Compensation Law. But, the care of livestock on a farm usually is farm labor.[5] In the case at bar, claimant was

1. Dost v. Pevely Dairy Co., Mo., 273 S. W.2d 242, 243(1); McCaleb v. Greer, 241 Mo.App. 736, 267 S.W.2d 54, 60–62 (5); Plemmons v. Pevely Dairy Co., Mo. App., 233 S.W.2d 426, 428.

2. Peterson v. Farmers' State Bank of Eyota, 180 Minn. 40, 230 N.W. 124; Dills v. Tennessee Nursery Co., 188 Tenn. 241, 218 S.W.2d 992, 993; Ginn v. Forest Nursery Co., 165 Tenn. 9, 52 S.W.2d 141, 142; Oliver v. Ernst, 148 Neb. 465, 27 N.W.2d 622, 623; Heffner v. White, 113 Ind.App. 296, 45 N.E.2d 342, 345. Consult also Tucker v. Newman, 217 Minn. 473, 14 N.W.2d 767, 769(1, 2); Partridge v. Blackbird, 213 Minn. 228, 6 N.W.2d 250, 251(1); Utica Mut. Ins. Co. v. Winters, 77 Ga.App. 550, 48 S.E.2d 918, 921; Bucher v. American Fruit Co., 107 Pa.Super. 399, 163 A. 33, 35. Note the same approved quotation in the McCaleb case, supra, 241 Mo.App. loc. cit. 747, 267 S.W.2d loc. cit. 60, and in the Plemmons case, supra, 233 S.W.2d loc. cit. 431–432. And, see Cloughly v. Equity Mut. Ins. Co., Mo., 243 S.W.2d 961, 966, although our Supreme Court carefully pointed out in the Dost case, supra, 273 S.W.2d loc. cit. 243, that the Cloughly case "did not involve a construction of our Workmen's Compensation Act" and "is not helpful in construing" that Act.

3. See McCaleb v. Greer, supra. Consult also Eberlein v. Industrial Commission, 237 Wis. 555, 297 N.W. 429, 430; Renner v. Board of County Com'rs of Lincoln County, 195 Okl. 400, 158 P.2d 341, 342 (1); Schroepfer v. Hudson, 214 Minn. 17, 7 N.W.2d 336, 337(1); Evansville Veneer & Lumber Co. v. Mullen, 116 Ind.App. 616, 65 N.E.2d 742; Melendez v. Johns, 51 Ariz. 331, 76 P.2d 1163, 1169.

4. E. g., Gruber v. Stickelman, 149 Neb. 627, 31 N.W.2d 753, 754(2); Texas Employers' Ins. Ass'n v. Derrick, Tex.Civ. App., 207 S.W.2d 199, 201–202(1); Gloubitz v. Smeed Bros., 53 Idaho 7, 21 P.2d 78, 79(2).

5. Plemmons v. Pevely Dairy Co., supra, 233 S.W.2d loc. cit. 428. Note the comment in Dost v. Pevely Dairy Co., supra, 273 S.W.2d loc. cit. 243, that the covered employee "did no work in connection with the cattle."

injured while working with calves purchased by Paul with a check drawn on his personal (farm) bank account. The record does *not* establish that Paul habitually (or, for that matter, on any other occasion) purchased livestock at the stock yards for resale through the sale barn, nor that sale of the four bull calves castrated by claimant was necessary to, or even beneficial in, operation of the sale barn. Certainly, the castration of bull calves is a not uncommon incident in the care of livestock on an Ozarks farm, and claimant's castration of the four calves under discussion was neither an immutable prerequisite to, nor a necessary incident of, their resale through the sale barn. The mere fact that Paul contemplated resale of these four calves on Saturday, September 18, 1954, did not compel a finding by the Commission that, while working with them on the previous day, claimant was employed in the sale barn enterprise. For, any attempt to classify an employee's labor on the basis of the intended use or disposition of the produce or stock with which he is working would lead to hopeless, unspeakable confusion.[6]

■ Since the rights of the parties are to be determined on the basis of the relationship actually existing when claimant was injured on Friday, September 17, 1954, his *subsequent* employment in the sale barn on one day, to-wit, on Saturday, September 25, 1954, is not material to proper determination of the issue presented. Ocean Accident & Guarantee Co. v. Industrial Commission of Utah, 69 Utah 473, 256 P. 405, 407(2); Maley v. Martin, 111 Colo. 545,

144 P.2d 558. Paul insisted that claimant was *not* employed in connection with the sale barn operation on the day of his injury; and, although not conclusive, this testimony, received without objection, was not without probative value. Garrison v. Campbell "66" Express, Inc., supra, 297 S.W.2d loc. cit. 29, and cases there collected in footnotes 7 and 8. Having in mind that the burden rested upon claimant to establish the applicability of the Compensation Law and his right to recover thereunder [Hogue v. Wurdack, Mo.App., 298 S.W.2d 492, 499 (15, 16), and cases there cited] and that the ultimate question for our determination is whether the Commission reasonably could have made its award *against* claimant, *not* whether an award *for* claimant might have found necessary support [Karch v. Empire Dist. Elec. Co., 358 Mo. 1062, 1070, 218 S.W.2d 765, 770; Francis v. Sam Miller Motors, Inc., Mo., 282 S.W.2d 5, 13], we are impelled to the conclusion that the award under attack must be sustained on judicial review.

Accordingly, it is the order and judgment of this court that the judgment of the circuit court be set aside and for naught held, and that the cause be remanded to the circuit court with directions to enter judgment affirming the final award of the Industrial Commission.

McDOWELL, P. J., and RUARK, J., concur.

---

6. Shafer v. Parke, Davis & Co., 192 Mich. 577, 159 N.W. 304, 305; Campos v. Garden City Co., 166 Kan. 352, 201 P.2d 1017, 1021; Greischar v. St. Mary's College, 176 Minn. 100, 222 N.W. 525; Laduke v. Martin, 261 App.Div. 344, 25 N.Y.S.2d 622, 624(2), affirmed 287 N.Y. 546, 38 N.E.2d 221; State Industrial Accident Commission v. Eggiman, 172 Or. 19, 139 P.2d 565, 569(3).