Mary **SELVEY** et al., Claimants-Respondents,

v.

Darrell D. **ROBERTSON** d/b/a Robertson's Dairy, Employer-Appellant,

and

Continental Insurance Company, a corporation, Insurer-Appellant.

No. 9026.

Springfield Court of Appeals, Missouri.

May 21, 1971.

Buehner & Thomas, L. R. Buehner, Joplin, for appellants.

Boyer & Ratzlaff, Gordon R. Boyer, Lamar, for claimants-respondents.

STONE, Judge.

In this proceeding under the Missouri Workmen's Compensation Law [Chap. 287], the widow and minor children of Leland Gayle Selvey, an employee of Darrell D. Robertson d/b/a Robertson Dairy, seek to recover death benefits on account of the employee's death in a tragic motorcycle-pickup crash on Highway 160 east of Lamar, Missouri, on August 25, 1967. (All statutory references are to RSMo 1969, V.A.M.S.) The referee found that, at the time of his death, the employee was engaged in exempt farm labor [§ 287.090, subsec. 1, subd. (2)] as to which the employer had not elected to bring himself within the operation of the Compensation Law [§ 287.-090, subsec. (2)], and accordingly denied compensation. On review, the Industrial Commission adopted the referee's findings and additionally found "that deceased employee was in excepted employment in that he was engaged in work long familiar as an incident of ordinary farming" and "at the time of his death he was returning from work which was incidental to his employment as he was paid, portal to portal." On claimants' further appeal, the circuit court filed an elaborate written opinion, including findings that "decedent was not a farm employee" and that "he was not engaged in farm duties at the time of the fatal accident but was being paid 'portal to portal,'" reversed and set aside the final award of the Industrial Commission denying compensation, and entered judgment awarding death benefits to claimants and directing payment of burial expenses as provided in § 287.240. With the laboring oar thus placed in their hands, the employer and insurer bring the case to us.

Particularly in view of the briefs and arguments here, it appears appropriate to emphasize at the outset that, although on judicial review the circuit court was in the first instance, and this court is on appeal, authorized to determine whether, upon the entire record, the Industrial Commission reasonably could have made the findings and award under consideration, this does not mean that either court may substitute its own judgment on the evidence for that of the Commission. Rather, a reviewing court may set aside the findings and award of the Commission only if they are clearly contrary to the overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and award. Brown v. Missouri Lumber Trans-

ports, Inc., Mo., 456 S.W.2d 306, 307; Ricks v. H. K. Porter, Inc., Mo., 439 S.W.2d 164, 166(2), 167(3-6); Snowbarger v. M. F. A. Central Co-operative, Mo. (banc), 349 S.W.2d 224, 225(2); Johnson v. Simpson Oil Co., Mo.App., 394 S.W.2d 91, 93(1). Our statement of facts accords appropriate and required recognition to that basic principle of judicial review in this category of cases. Vandaveer v. Reinhart & Donovan Const. Co., Mo.App., 370 S.W. 2d 156, 158; Heaton v. Ferrell, Mo.App., 325 S.W.2d 800, 802.

Darrell D. Robertson operated a milk processing plant and store in Lamar, Missouri. That real estate was acquired by Darrell and title thereto was taken in his name. The raw milk for the processing plant was supplied by a herd of cows on "the family farm . . . located approximately seven miles northeast of Lamar," which was owned by Darrell's father, Loyd F. Robertson. Darrell "grew up" on that farm and, while yet a youth, acquired "some cows" of his own which became and remained a part of the herd of cows on the farm while he was a student in Missouri University and thereafter in military service. After his discharge from service in 1959, he and his father went "into the dairy business together" as equal partners. Each of them owned "some of the cows" in the herd on the family farm, with title to the farm remaining in the father. All of the farm expenses "pertaining to the production of milk" and all of the expenses of the processing plant were paid from the same "dairy account," the net profits of the partnership enterprise were credited to the father and son "fifty-fifty," and annual partnership tax returns were filed on that basis.

Leland Gayle Selvey was employed by Darrell about four years prior to the fatal accident. The Selvey family resided "rent free" in a house owned by Darrell which was next door to the processing plant and store in Lamar. When, at the hearing before the referee, the widow was asked by her counsel "what did your husband do for Darrell Robertson," she answered "he milked the cows"; and the next question, "did he have any other duties other than milking cows," elicited the simple, unelaborated answer, "no." To perform these duties, he made two round trips daily, one early in the morning and the other early in the afternoon, from his residence to the Robertson farm seven miles northeast of Lamar. The milking process consisted of "getting [the cows] washed and ready for the [automatic] milkers" and then milking them four at a time. Milk was transported from the farm to the processing plant three times each week in a bulk tank on a trailer hooked to a pickup truck owned by the dairy. The empty tank was taken from the processing plant to the farm on the early afternoon trips on Mondays, Wednesdays and Fridays but, as Darrell explained, on each occasion the tank was not filled and returned to the plant until the following morning. Just before the empty tank was moved from the plant on the next trip to the farm, the interior of the tank was cleansed and rinsed with water and then drained.

For his early morning trips to the Robertson farm, Selvey always provided his own transportation, using either his motorcycle or the Selvey family car. One of the benefits accruing to Selvey by reason of his residence next door to the processing plant and store was that on the afternoon trips he frequently rode to the Robertson farm in the dairy pickup. As Mrs. Selvey agreed on cross-examination, "when [Darrell] was there" he drove the pickup; "if [Darrell] wasn't there" her husband drove the pickup but that was not "a part of his regular duties." "Normally" Darrell rinsed and drained the interior of the empty bulk tank before it was hooked to the pickup and taken to the farm, but "on occasions when [he] was not present or would perhaps be late" Selvey attended to the rinsing and draining of the empty tank. However, Darrell testified positively that Selvey had "no assigned duties" in the processing plant or store and that his only "required duties were to milk cows."

Initially, Selvey was paid a fixed wage per month, but sometime prior to his fatal accident he went on an hourly rate "from the time he left home until he returned home," the moving consideration for this change having been (so Darrell explained) that "it was more fair to compensate" Selvey on that basis because from time to time there were substantial variations in the number of cows to be milked. Upon his return from each trip to the farm, Selvey recorded his time on a time sheet in the dairy store and then went home. While returning on his motorcycle from his early morning trip to the farm on Friday, August 25, 1967, he sustained fatal injuries as the result of a collision with a pickup truck which occurred at a point along the route customarily traveled between his home and the farm.

On the date of accident, there was in force and effect a workmen's compensation insurance policy issued by Continental Insurance Company to Darrell D. Robertson d/b/a Robertson's Dairy affording coverage for "Dairy Products Stores—Retail; Ice Cream Mfg.—including salesmen, drivers; Creameries—including salesmen, route supervisors, drivers," but providing no coverage for the statutorily-exempt employment of farm labor [§ 287.090, subsec. 1(2)], as was manifest upon the face of the policy and was confirmed by witness Carr, Continental's Kansas City branch office casualty superintendent.

■ The determinative question presented to the referee in the first instance and to the Industrial Commission on review was whether or not Selvey's employment at the time of his fatal accident was one of farm labor. The nature of his employment was determinable from the whole character of the work he was required to perform and not simply from a consideration of what he was doing at the time of his accident or the place of accident or the general nature and scope of the employer's business.[1] We have no doubt but that, from the evidence adduced upon hearing, the referee and the Industrial Commission reasonably could have found that Selvey was employed to milk cows on the Robertson family farm, and that this was the only work he was required to perform and was, in fact, the work he had performed on the morning of the fatal accident. The milking of cows is work historically and logically regarded as an incident of farming, and one performing such work usually is held to be engaged in farm labor. Plemmons v. Pevely Dairy Co., 241 Mo.App. 659(1, 2), 233 S.W.2d 426(1); Beyer v. Decker, 159 Md. 289, 150 A. 804.

We are unable to embrace instant claimants' contention, unsupported by authority, that Selvey had the "duties of a specialist" and thus had been lifted above and out of the category of farm labor because his assigned task had been made less onerous by the availability and use of automatic milking machines. No more persuasive or acceptable is the theory espoused by claimants' counsel and approved by the trial court that, at the time of his fatal accident, Selvey was not a farm laborer because (in the language of counsel) "his employment at that time was not milking cows but traveling back to his home for which time he was being paid." The only purpose of that ill-fated early morning trip was to enable Selvey to milk cows on the Robertson family farm, i. e., to perform work which both the referee and the Industrial Commission reasonably found (so we think) to have been farm labor. In these circumstances, "the journey [was] an inherent part of the service" [1 Larson, Workmen's Compensation Law § 16.00, l. c. 253]

1. Dost v. Pevely Dairy Co., Mo., 273 S.W.2d 242, 243(1); Albin v. Hendrich Brothers Implement Co., Mo.App., 382 S.W.2d 734, 739(4); Vandeventer v. Melson, Mo.App., 330 S.W.2d 156, 159–160(2); Blew v. Conner, Mo.App., 310 S.W.2d 294, 299(10), approved as to this holding Mo. (banc), 328 S.W.2d 626, 629, 630(7); Davis v. McKinney, Mo. App., 303 S.W.2d 189, 192(2); McCaleb v. Greer, 241 Mo.App. 736, 747, 267 S.W.2d 54, 60(5); Plemmons v. Pevely Dairy Co., 241 Mo.App. 659, 669, 233 S.W.2d 426, 431–432.

or, as the Industrial Commission put it, "was incidental to his employment as he was paid, portal to portal"; and Selvey's status, portal to portal, was that of an employee engaged in farm labor.

■ Emphasizing the statutory injunction that the provisions of the Workmen's Compensation Law "shall be liberally construed with a view to the public welfare" [§ 287.800—see Dost v. Pevely Dairy Co., Mo., 273 S.W.2d 242, 244; Baer v. City of Brookfield, Mo.App., 366 S.W.2d 469, 471(6)], claimants' counsel attach "great significance" (a) to Darrell's statement, in response to the referee's inquiry "had you elected to come under the Compensation Act at the farm," that "we can find no record of this and I cannot recall it . . . . I actually got into this compensation thing through an agent . . . who said 'your employees are covered' and I did not know really until this accident happened that there was a differential between farm help and other type help . . . ." and (b) to the bland comment of witness Carr that "in writing such policies, we try to obtain wishes and desires of the insured as to who is and who is not to be covered." We are unable to follow claimants' counsel in their bold leap from the two above-quoted statements to their confident conclusion that "it was the intention of both the employer and the insurer to afford coverage for [Selvey] and his dependents." But that aside, the fact remains that not a scintilla of evidence indicated employer Darrell had, with respect to the exempt employment of farm labor, elected to bring himself within the provisions of the Compensation Law [Chap. 287] in either of the two ways specifically provided in § 287.090, subd. 2, i. e., (1) by filing with the Division of Workmen's Compensation notice of his election so to do, or (2) by purchasing and accepting a valid compensation insurance policy, the terms of which showed such intent. Obviously, neither Darrell's preaccident ignorance of the exempt status of farm labor nor any postaccident conclusion, reached in the illuminating glare of hindsight, as to what he should or would have done if he had been endowed with preaccident knowledge of such exempt status could constitute or work a preaccident statutory election under § 287.090, subd. 2.

■ It is a trite principle that claimants, who assert the applicability of the Compensation Law, have the burden of so proving. Davis v. McKinney, Mo.App., 303 S.W.2d 189, 193(6); Hogue v. Wurdack, Mo.App., 298 S.W.2d 492, 499(15, 16), and cases there cited. And the statutory direction that the Compensation Law be construed liberally neither impinges upon the function and right of the Industrial Commission, as trier of the facts, to draw from the evidence such inferences and findings as may be fairly and reasonably permissible [Johnson v. Simpson Oil Co., supra, Mo. App., 394 S.W.2d at 98(14); Barton v. Western Fireproofing Co., Mo.App., 326 S.W.2d 344, 349(6); Staten v. Long-Turner Const. Co., Mo.App., 185 S.W.2d 375, 381(13)] nor authorizes allowance of a claim where coverage is not provided or an essential element required by law is lacking. Gregory v. Lewis Sales Co., Mo.App., 348 S.W.2d 743, 747–748(6); Ott v. Consolidated Underwriters, Mo.App., 311 S.W. 2d 52, 56–57; Hogue v. Wurdack, supra, 298 S.W.2d at 500(20).

Concluding that, on the evidence presented, the Industrial Commission reasonably could have found (as it did) that Selvey's employment at the time of accident was one of farm labor and that, with respect to such exempt employment, his employer had not theretofore elected to bring himself within the provisions of the Compensation Law [Chap. 287] in either of the two ways specifically provided in § 287.090, subd. 2, it becomes our duty to set aside the judgment heretofore entered in the Circuit Court of Barton County and to remand the cause to that court with directions to enter a judgment affirming the final award of the Industrial Commission denying compensation. It is so ordered.

TITUS, P. J., and HOGAN, J., concur.