DELORA WRIGHT, CLAIMANT, RESPONDENT, v. PENROD, JURDEN & CLARK CO., EMPLOYER, CONSOLIDATED UNDERWRITERS, INC., INSURER, APPELLANTS.—88 S. W. (2d) 411.

Kansas City Court of Appeals.   November 12, 1935.

1148

*Julius C. Shapiro* and *Johnson, Garnett & Quinn* for respondent.

*Morrison, Nugent, Wylder & Berger* and *Chas. C. Byers* for appellants.

REYNOLDS, C.—This is an appeal from the final judgment of the Circuit Court of Jackson County setting aside an award of the Workmen's Compensation Commission.

On June 27, 1933, the plaintiff, Delora Wright, filed before the Workmen's Compensation Commission her claim as the widow of Byron Leroy Wright, deceased, for compensation on account of injuries received on June 17, 1933, by said Byron Leroy Wright by alleged accident arising out of and in the course of his employment while in the service of the defendant Penrod, Jurden & Clark Company, a corporation at Sheffield, Missouri, as his employer, which alleged accidental injuries on said date resulted in his death. The claim was filed against the defendant Penrod, Jurden & Clark Company and against T. H. Mastin Insurance Company, as insurer. The defendants made answer to the complaint filed with the commission, filed July 15, 1933, denying each and every allegation thereof.

The claim was heard on September 7, 1933, before the Honorable J. J. James, a member of the Commission. Upon the hearing, the evidence offered by plaintiff in support of her claim, as well as that offered by defendants in opposition thereto, was received and duly preserved by the commissioner. Thereafter, on September 28, 1933, the said commissioner made report upon said hearing, accompanied by his finding of facts on the evidence offered, awarding compensation to plaintiff in the total sum of $3219 and, for funeral expenses of the deceased employee, in the sum of $150. On October 6, 1933, upon application of defendants duly made and filed, the award of the Honorable J. J. James was reviewed and was by the commission reversed and set aside; and a final award was entered denying compensation for the alleged accident, which said award was in part as follows: "We find from the evidence that the dependent has failed to prove that the employee's death was the result of an accident as alleged on June 17, 1933. Therefore, compensation must be denied." Such final award was dissented from by said Commissioner James.

Thereafter, under the certificate of the commission, an appeal from said award denying compensation was duly lodged in the circuit court of Jackson county by the return to said court by the commission of all documents and papers on file in the cause together

with a transcript of the evidence and the findings and also the award, the orders, and the decisions by it made thereon.

Thereafter, on February 18, 1935, upon a hearing had upon said appeal, the Circuit Court of Jackson County ordered the said award appealed from set aside and for naught held and remanded the cause to the commission for a rehearing.

The grounds for such action by the court fully appear from its order and judgment at such time entered, which said order and judgment are as follows:

"Now on this day, this cause having heretofore come on regularly for hearing, upon an appeal from an award of the Workmen's Compensation Commission of Missouri, denying compensation; plaintiff-claimant, appearing by her attorney, and defendants-employer and insurer appearing by their attorney, and said cause and appeal is submitted to the court, and taken under advisement, the court, having read the record, pleadings, documents, exhibits, papers, transcript of the evidence, and the findings and award filed in said cause, and now being fully advised in the premises, finds that the award denying compensation in this cause, was erroneous, improper, and contrary to law in this, to-wit:

"1. That the Missouri Workmen's Compensation Commission, by a majority ruling thereof, in making the award denying compensation in this cause, acted without, or in excess of its powers; and

"2. That the facts found by the majority of the members of the Compensation Commission do not support the award as made by the Commission; and

"3. That there was not sufficient and competent evidence in the record to warrant an award denying compensation to plaintiff-claimant.

"Wherefore, it is ordered, adjudged and decreed that the award denying compensation, heretofore made in this cause, by the majority of the members of the Workmen's Compensation Commission of the State of Missouri, be and the same is hereby set aside, and for naught held; and

"It is further ordered that said cause and proceedings be, and it is hereby remanded to the Workmen's Compensation Commission for a rehearing and determination, in conformity with this judgment."

From said judgment reversing and setting aside said award and remanding the cause, the defendants have duly perfected an appeal to this court.

It is contended by defendants (appellants herein) that the circuit court erred in holding that the Workmen's Compensation Commission, in making its award denying compensation, acted without and in excess of its powers.

The contention is well made. The commission had full jurisdiction to render its final award. It had jurisdiction of the parties and of the subject-matter and jurisdiction to entertain the proceedings therefor and to render the award. [Chapter 28, Revised Statutes 1929.] By sections 3339, 3340, 3341, and 3342, Revised Statutes 1929, it is provided that a hearing shall be had in the first instance either by the full commission or by one of its members. If such hearing be had by one of its members, the award made by him is subject to review by the full commission and to a hearing and a final award by the full commission, which final award becomes conclusive unless avoided by appeal therefrom.

Nothing appears in the record herein by which the proceedings before the commission are impeached. That there was irregularity or irregularities by which its jurisdiction to proceed was interrupted or divested is not to be presumed. [Waterman v. Chicago Bridge & Iron Works, 328 Mo. 688, 41 S. W. (2d) 575.]

■ It is next contended by defendants that the circuit court erred in reversing and setting aside the award of the commission on the ground that the facts found by the commission did not support the award made by it. An examination of the record discloses that this contention must be sustained.

It will be noticed that the commission's finding, upon which the award of no compensation was based, was of the ultimate fact that, under the evidence, the plaintiff had failed to prove that the employee's death was the result of the accident as alleged in the complaint. In other words, it found that, from a consideration of the entire evidence, the employee's death was not shown to be the result of an accident; and it denied compensation.

It is the law that, before compensation may be allowed, the injury for which it is claimed must have been occasioned by accident arising in the course of the injured employee's employment; and therefore a finding by the commission, upon competent evidence, that the evidence failed to show that the injury inflicted was the result of an accident is the finding of an essential ultimate fact which prevents compensation.

Such a finding does not amount merely to a ruling that the complainant (the plaintiff) did not make out a prima facie case; but, upon the other hand, it constitutes a finding for the employer and against the claimant on the whole evidence with an award based on such finding. [Doughton v. Marland Refining Co., 331 Mo. 280, l. c. 288, 53 S. W. (2d) 236.]

It therefore follows that the award of no compensation was directly responsive to the facts as found by the commission and directly supported thereby and that the contention of defendants that the circuit court erred in so far as it based its reversal of the commission's

award upon the ground that such award was not supported by the facts as found by the commission must be sustained.

■ It is next contended by defendants that the circuit court erred in reversing and setting aside the award of the commission on the ground that there was not sufficient competent evidence in the record to warrant the award denying compensation; and defendants insist that the award as made was supported by sufficient competent evidence and was binding upon the circuit court upon appeal. This contention must likewise, upon the record, be upheld.

It is contended by plaintiff that the deceased employee came to his death as the result of being accidentally asphyxiated by poisonous gases while cleaning the fire under the boilers which he was employed to fire. Defendants contend that he died as the result of a heart attack.

At the time of his death, Wright was fifty-six years old, five feet eight inches tall, and weighed one hundred and eighty-five pounds. He lived with his family, consisting of his wife (the claimant) and his minor daughter Mary Wright, age seventeen years. He was a night fireman, on duty from six o'clock each evening until six o'clock each morning, seven days a week; he had been engaged in that work for approximately sixteen years; and his duties required manual labor of a heavy type.

The boiler room where he worked and in which he died contained five boilers with separate fire boxes under each. The boiler room or pit was several feet below the floor of the remainder of the building.

It was the duty of the deceased Wright to wheel coal into the boiler room from bins on the outside to provide fuel for each night's firing and that duty required him to wheel about three wheelbarrow loads every five minutes and to handle in that way from three to four tons of coal a night. It was also his duty to clean the fires about every three hours. This was accomplished by pulling the live, crackling, hot coals and slag out of the burners or fire boxes, wetting them down, removing the ashes from the ash pit, and wheeling the wetted ashes and slag (of a total weight of from four to six hundred pounds) out of the boiler room by means of the wheelbarrow to a point outside some fifty feet distant.

The evidence shows that the deceased had always been strong, robust, and active. He would work in his garden for hours at a time and then take up his work as a fireman at six o'clock the same night. He would go fishing three and four and five times a week and walk about three miles to the place where he fished, walk back, and then go to work. He never made any complaint of being sick or unable to work; and he was never attended by a physician for any sickness "other than an attack of the flu some thirteen years before his death." He frequently climbed steep stairs without any sign of

shortness of breath. There is no testimony whatever of any outward evidence of any heart ailment made manifest to any witness.

On the evening of the night he was killed, his daughter, as was her custom, drove him to work, letting him out of the car about a quarter of a mile from the plant. She testified that he was apparently healthy and normal and was enjoying life, joking with her as he went to work. Jenne, a fellow workman, who saw him as he came on duty that evening, testified that apparently he was happy and was enjoying life. Witness Ross, sawyer and engineer for the company, saw Wright wheeling in his coal shortly after six o'clock and, at that time, he was whistling and was apparently happy and enjoying life and appeared healthy and normal and just like an ordinary individual working. Kennedy, night watchman, testified that he saw Wright running in his coal about seven o'clock, at which time he was apparently healthy, normal, and enjoying life; that he ate lunch with him at eleven twenty-five and did not see anything unusual about him; and that he saw him at three-thirty that morning "pulling his fires" and, at that time, he was apparently healthy, normal, and doing his customary work with ability and had no difficulty in doing it. Just forty minutes later, at four-ten that morning, Kennedy found him dead on the ashes and hot, live coals.

The evidence shows that poisonous gases were present in the live and burning coals taken from the fire boxes and that the application of water thereto would cause them to puff out.

An autopsy was held on the body of the deceased by Dr. C. G. Leitch, deputy coroner, who testified upon the hearing that, in his opinion, based upon the pathological findings in the heart, the deceased Wright died as the result of heart disease occasioned by "slowly progressive changes in the coronary vessels of his heart, resulting in interference with the blood supply to the heart, by virtue of which its nutrition was impaired, and it became grossly increased in size, dilated, and failed to perform its function, resulting in sudden death;" that, on the performance of the autopsy, he looked for evidence of gas poisoning, including carbon monoxide and hydrogen sulphide; that there was no evidence of death from carbon monoxide, either upon inspection or upon chemical analysis of the blood; that, had the death been caused by carbon monoxide, evidence would have been present; that the mucous membrane of the bronchi showed no evidence of irritation, which would have been present had death been produced by hydrogen sulphide poisoning; that the autopsy showed no irritation of the bronchial mucosa and no indication of gas poisoning whatever; that one can die of heart disease without any apparent symptoms; that, if the deceased had died of gas poisoning, there would have been evidence of it in the post mortem examination.

It was further testified by Dr. George E. Knappenberger, as a witness for the defendants, that he had examined the autopsy report; that, in his opinion, based on said report, the death of the deceased had been caused by heart trouble; that, if death had resulted from the effect of poisonous gases, such fact would have been definitely identified by the evidence shown by the autopsy; and that no such evidence was present.

It was further testified by Dr. D. D. Stofer, a witness for the defendants, that the findings upon the autopsy as to the condition of the deceased's heart were sufficient to show death to have been caused by heart failure and, further, that a post mortem examination, had death resulted from either carbon monoxide or hydrogen sulphide poisoning, would have revealed such fact. Dr. Helwig gave evidence to the same effect.

The plaintiff's evidence, aside from the testimony of lay witnesses who gave evidence concerning the apparent former health of the deceased and who testified as to the physical location of and the surroundings of the engine and the boilers, consisted of the testimony of two doctors, R. C. Davis and Max Goldman, and of chemist G. H. Clay.

Dr. Davis testified for plaintiff that he had examined the report of the autopsy performed by Dr. Leitch, deputy coroner, and that, in his opinion, based upon the autopsy report, while death could have resulted from heart disease, it did not do so. He stated that, if death was not caused by heart trouble, asphyxiation as a result of some form of gas poisoning would have to be considered in determining an explanation for the death. He did not appear certain that the death was the result of asphyxiation or that it was not. He admitted that no form of gas poisoning was shown in the autopsy but gave it as his opinion that carbon monoxide or sulphur dioxide might have caused the death. In his opinion, the condition of the heart as shown by the autopsy was not such as to have caused the death of the deceased; and, excluding heart disease as the cause, the only other explanation for the death would be asphyxiation from the poisonous gases.

Dr. Max Goldman testified, basing his statements upon the autopsy report, that, in his opinion, the death of the deceased Wright did not result from heart failure; that, in his opinion, in the absence of any other cause for the death so far as he could learn, his conclusions would be that the deceased was overcome by poisonous vapors.

The witness Clay testified that he had never heard of death resulting from the inhalation of carbon monoxide gas without finding it in the blood upon the performance of an autopsy and that, in his opinion, hydrogen sulphide was the only gas capable of producing death under the circumstances described to him. He further testi-

fied that, in his opinion, in the event of death from hydrogen sulphide, there would be indication in the mucous of the respiratory system showing the effect of such poisoning but that it would take a careful examination to find it.

█ It will thus be seen that the evidence as to the cause of the death of the deceased employee was conflicting; that there was not only evidence tending to show that it was the result of an accidental asphyxiation from poisonous gases and also evidence tending to show that it was not the result of poisonous gases but there was evidence tending to show that it was the result of heart failure and also evidence contradicting the claim that death was the result of heart failure. Under such circumstances, it clearly became a question for the commission to determine, upon the evidence before it, whether death was the result of accidental asphyxiation by poisonous gases as claimed by the plaintiff or whether it resulted from other causes. In other words, it was for the commission to determine whether the evidence proved death from accidental asphyxiation or from some other cause.

It was said in Moore v. Federated Metals Corporation (Mo. App.), 83 S. W. (2d) 208, 1. c. 209:

"The finding of the commission, if supported by competent substantial evidence, is conclusive. [Section 3342, R. S. Mo. 1929 (Mo. St. Ann. Sec. 3342, p. 8275).] Its findings have the force and effect of the verdict of a jury. [State ex rel. Brewen-Clark Syrup Co. v. Missouri Workmen's Compensation Commission et al., 320 Mo. 893, 8 S. W. (2d) 897, loc. cit. 899; Leilich v. Chevrolet Motor Co., 328 Mo. 112, 40 S. W. (2d) 601, loc. cit. 603; Waring v. Met. Life Ins. Co., 225 Mo. App. 600, 39 S. W. (2d) 418, loc. cit. 423; Metting v. Lehr Const. Co., 225 Mo. App. 1152, 32 S. W. (2d) 121; Morris v. Dexter Mfg. Co., 225 Mo. App. 449, 40 S. W. (2d) 750.]

"If there be substantial evidence supporting the award of the commission, the court, on appeal, will not set the award aside as being against the weight of the evidence. [Miller v. St. Joseph Transfer Co., 224 Mo. App. 1114, 32 S. W. (2d) 449; Hammack v. West Plains Lumber Co., 224 Mo. App. 570, 30 S. W. (2d) 650.]"

By Section 3342, R. S. 1929, it is provided:

"The final award of the commission shall be conclusive and binding unless either party to the dispute shall within thirty days from the date of the final award appeal to the circuit court . . . Upon appeal no additional evidence shall be heard and in the absence of fraud, the findings of fact made by the commission within its powers shall be conclusive and binding. The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

"1. That the commission acted without or in excess of its powers.

"2. That the award was procured by fraud.

"3. That the facts found by the commission do not support the award.

"4. That there was not sufficient competent evidence in the record to warrant the making of the award."

■ Now, if the evidence is such as to authorize a finding either way and the triers of the facts find against the plaintiff's claim, that finding is necessarily conclusive on appeal. So in this case, if there is substantial evidence in support of the commission's finding on this issue, it matters not that there may be evidence which would support a finding thereon for plaintiff upon the theory of accidental asphyxiation had the commission so found. [Doughton v. Marland Refining Co., supra.] We think it clear that there is substantial evidence to support the finding and award of the commission.

■ In Hammack v. West Plains Lumber Co., 224 Mo. App. 570, 30 S. W. (2d) 650, the circuit court had reversed the award of the commission and remanded the case for further hearing. On appeal, the Springfield Court of Appeals reversed the judgment of the circuit court, saying, through Judge Cox, at page 572 of 224 Mo. App.:

"The circuit court in considering this testimony can do but two things in relation to the finding of facts by the commission. It may determine whether the facts found by the commission will support the award and it may determine what part, if any, of the testimony heard by the commission was incompetent and then may determine whether or not the competent evidence was sufficient to warrant the making of the award. The circuit court cannot try the case *de novo* nor pass judgment on the weight of the evidence. As to the weight of the evidence the finding of the commission is conclusive and binding upon the court. The right of the circuit court to set aside the finding of the commission because against the weight of the evidence as it may once set aside the verdict of the jury in a civil action does not exist under the Workmen's Compensation Act. While the finding of the commission for all purposes governing the result takes the place of the verdict of a jury, the statute, section 1454, Revised Statutes 1919, which authorizes the trial court to set aside the verdict of the jury once because against the weight of the evidence does not apply to a proceeding under this statute, but, in the absence of fraud, the finding of the commission as to the facts to be found from the evidence when there is sufficient evidence to support the award is conclusive and binding and in determining whether or not the evidence is sufficient to support the award the court must consider only the evidence which tends to support it and must disregard all the opposing evidence just as it would do in passing upon a demurrer to the evidence in an ordinary civil action."

In Decker v. Raymond Concrete Tile Co. (Mo.), 82 S. W. (2d) 267, a deceased who worked with an acetylene torch was found to be suffering with edema of the lungs. He was also found to be afflicted with heart disease. He died, and the opposing contentions were based respectively on death from the inhalation of gas and death due to heart disease. Upon an appeal to the circuit court from an award of the commission denying compensation, the award was set aside. Upon appeal from the action of the circuit court setting aside said award, the Supreme Court reversed the judgment of the circuit court, saying on pages 267 and 268 of 82 S. W. (2d):

"The sole question before us is whether the trial court was justified in setting aside the award made. An award of the compensation commission is in law regarded as a special verdict and if supported by substantial, competent evidence it must prevail."

Again, in the case of King v. Mark Twain Hotel (Mo. App.), 60 S. W. (2d) 675, the circuit court, upon an appeal, set aside the award of the compensation commission in favor of the employee. Upon appeal from the judgment of the circuit court, such judgment was reversed by the St. Louis Court of Appeals and by such court remanded with directions to enter judgment affirming the award of the compensation commission. In reversing the judgment of the circuit court, after reviewing the evidence, the Court of Appeals, speaking through Judge BECKER, said, at page 677 of 60 S. W. (2d):

"Though from what we have outlined above it is apparent that there is sufficient competent evidence in the record to have supported an award in claimant's favor, yet there is also in the record competent evidence to the contrary, sufficient to support the finding of the full commission that the condition which caused the employee's death was not the result of an accident arising out of and in the course of his employment, and that said death was the result of causes independent of his employment.

"(7). Where, as in the instant case, the evidence is conflicting, and there appears sufficient competent evidence to support a finding for or a finding against claimant, and the members of the commission, who are the triers of the fact, find against the plaintiff's claim, that finding is necessarily conclusive on appeal."

■ The only remaining question, then, is whether the evidence in support of the contention that the deceased died as a result of heart failure and not from the effect of poisonous gases is competent evidence for that purpose and sufficient therefor. If it is, under the authorities cited and quoted, the award of the commission is conclusive. The plaintiff attacks the evidence of Dr. Leitch and other doctors for the defendants, so far as the same is based upon the autopsy, as incompetent for the alleged reason that, at the time that the autopsy was made, Dr. Leitch had no informa-

tion as to the general condition. of health of the deceased or of his immediate surroundings at the. time of his death, other than. that he was advised that the deceased was found lying on ashes and cinders which had been wet down. He was not advised as to the quantity of ashes or the size of the room in which the deceased was found or of any other elements which might have been taken into consideration, if known, in determining the conclusions that he reached. He was not advised that the deceased was apparently healthy and normal and had been working regularly and, at the time of or immediately preceding his death, was wheeling in coal and apparently enjoying his work. He was not advised of the quantity of ashes and live, hot, crackling coals that were taken out of the furnaces when the fires were "pulled."

Dr. Leitch testified that he made up the death certificate on the basis of the post mortem findings and such circumstances as he knew respecting the employment of the deceased and the conditions under which he was found. Dr. Leitch testified further after having admitted that, at the time he made the autopsy, he had not been advised of the particulars mentioned and after his attention had been called to them, in answer to questions by Commissioner James, as follows:

"Q. What, in your opinion, caused the death of this man? A. My opinion is this man died as a result of heart disease.

"Q. What was the disease of the heart, or what took place that produced death? A. Degenerative changes in the walls of the blood vessels of his heart, that supply blood and nutrition to the heart muscle, hardening of the arteries, in other words.

"Q. This degenerative change did what to the coronary? A. It diminished the lumen so that the amount of blood flowing through the coronary artery was diminished.

"Q. Is that shown in your report? A. Yes, sir.

"Q. Is that what you call occlusion? A. No, sir; in occlusion there will be no flow through at all. This is only partial occlusion inasmuch as the movement of the vessel is restricted.

"Q. You think there is enough closing there to prevent sufficient blood from going through? A. Yes.

"Q. What poison gases, if any, are there in cinders, coal. slag, etc.? A. In good coal the only poisonous gas that would result from uncompleted combustion is carbon monoxide gas. In impure coal there may be small amounts of arseniureted hydrogen, hydrogen sulphide.

"Q. And would a person, with the heart condition that you found in this man's heart, be more liable to die from these poison gases than one without a bad heart? A. Not in my opinion, based

on the fact that I can't speculate on the presence of these gases in sufficient quantities under the circumstances.

"Q. Assuming that they were in sufficient quantity, would it require a less quantity to cause death in this man than in a normal heart? A. I don't believe it would make any difference.

"Q. The gas has no effect on the heart? A. Only insomuch as it prevents the blood from carrying a normal amount of oxygen to the heart.

"MR. SHAPIRO: It does affect the heart? A. Just because of its nutrition.

"MR. SHAPIRO: It affects the heart in its function? A. It causes a lack of nutrition.

"COMMISSIONER JAMES: But not because of the diseased heart? A. No, I think not as long as the heart was compensated.

"MR. GLYNN: If there was any evidence of gas poisoning it would have been found in the autopsy? A. I think if there was gas present in sufficient quantities to affect this man, there would have been evidence of it in the post mortem.

"MR. GLYNN: The fact that the post mortem was performed after the embalming, would that have any effect in determining the evidence of gas poisoning? A. No, I think not.

"MR. GLYNN: If there was carbon monoxide in the blood, would you have found it in the post mortem? A. Yes.

"MR. GLYNN: Is there any question about that?

"MR. SHAPIRO: I object to that. That is for the Commission to pass on. He stated that he would have found it.

"MR. GLYNN: That is all."

■ It would appear therefore that, in spite of the previous history of the deceased and his previous condition of physical strength and apparent good health and his surroundings at the time of his death, with any and all implications arising therefrom, the evidence of Dr. Leitch as to the unsound and diseased condition of deceased's heart as he found it in making the autopsy was in itself, in his opinion and the opinions of the other experts testifying for the defendants, sufficient to account for and did account for the death of the deceased and, as such, became competent evidence for the consideration of the commission and sufficient upon which to base its findings. As trier of the fact, it had the right to accept such evidence as true, to the exclusion of other evidence to the contrary.

Likewise, Dr. Ferdinand C. Helwig, for the defense, testified that he had examined the post mortem report made by Dr. Leitch in connection with his autopsy of the deceased; that, in his opinion, based thereon, heart failure was the cause of Mr. Wright's death; and that there were sufficient findings in the report to account for sudden death by heart failure. He stated it was not unusual or unexpected to find a person dying with heart trouble without show-

ing any particular symptoms of it and that people fell dead suddenly without preliminary manifestations. In answer to the question as to whether there was any question in his mind that the conditions of the heart of the deceased as found by Dr. Leitch upon his autopsy and set forth in his report were sufficient to cause death, he answered, "I think there is no question about it." Again, when asked, "You say absolutely that there are sufficient findings in that report to cause the heart death?", he answered, "Emphatically." This witness had also been given some information as to the surroundings of the deceased at the time of his death. The evidence of this witness was undoubtedly competent. Again, Dr. George E. Knappenberger testified that he had examined the autopsy report of deputy coroner Leitch and that it contained sufficient findings to account for a death from heart disease. Dr. Stofer gave evidence to the same effect. The evidence of all such witnesses was competent. Moreover, each of these witnesses testified to facts negativing death from poisonous vapors of any character. Each of them testified that, had death been caused by vapors of any kind or character, evidence of such vapors would have been found in the post mortem examination from irritation in the bronchial mucosa of the respiratory tract or in the lungs. Dr. Leitch testified that he found no evidence of any irritation whatever. He especially examined for evidence of carbon monoxide injury but said that he found no evidence of that or of any other injury. Such was the effect also of the testimony of Doctors Helwig, Knappenberger, and Stofer; that is that the presence of injury from poisonous gases is manifested by irritation of the bronchial mucosa in the respiratory regions and that such irritation is always discoverable in a post mortem examination, sometimes more easily than at others. All of such evidence was competent upon the issues in the cause.

■ The defense of defendants not only included competent evidence that the deceased's death had not resulted from gas poisoning of any kind but also, going beyond a mere negation of the claims of the plaintiff, included competent evidence to the effect that deceased Wright died as a result of heart failure, which in itself was contradictory of plaintiff's claim of an accidental death. It was not within the province of the circuit court to review the evidence further than to pass upon its sufficiency and competency.

■ That there was sufficient competent evidence to support the award as made, we think there is no doubt, although there may have been other sufficient competent evidence in the record to have supported an award of death from accidental asphyxiation from poisonous gases if the commission had so found. However, it did not so find; and its findings, as made, are conclusive.

■ There is nothing in the record leading to a conclusion that the commission, in making this award, acted inconsistently with a proper regard for its duties in determining the issues in accordance with the law and the evidence as contended by plaintiff. As trier of the facts, to it belonged the right to determine wherein the weight of the evidence lay.

■ The action, therefore, of the learned judge who tried the case below in holding that the award of the commission was not supported by sufficient competent evidence must be held to have been erroneous. The judgment of the circuit court reversing and remanding the award of the commission is, for the reasons stated, reversed; and the cause is remanded with directions to affirm the award of the commission as made. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment of the circuit court is reversed, and the cause is remanded with directions to affirm the award of the commission as made. All concur.