Laura R. COUNTS (Plaintiff), Appellant,

v.

BUSSMAN MANUFACTURING COMPANY, Employer, and Hartford Accident & Indemnity Company, Insurer (Defendants), Respondents.

No. 29529.

St. Louis Court of Appeals.

Missouri.

Feb. 5, 1957.

Milton F. Napier, St. Louis, for appellant.

E. J. Barker, John S. Marsalek, Moser, Marsalek, Carpenter, Cleary, Jaeckel & Hamilton, St Louis, for respondents.

WOLFE, Commissioner.

This is an appeal from a judgment of the circuit court affirming an award of the Division of Workmen's Compensation of the Department of Labor and Industrial Relations of Missouri. The claim was first heard before a referee who denied compensation on the ground that the employee sustained "no condition or disability attributable to her employment with Bussman Manufacturing Company". There was an appeal to the full commission which made a finding to the same effect. This was followed by an appeal to the circuit court which affirmed the commission.

The facts of the matter are that the Bussman Manufacturing Company manufactures electrical fuses of various sizes and capacities and it has a plant for this purpose in the City of St. Louis. Laura R. Counts started to work for the company on February 6, 1952. She first worked on the third floor where her duties consisted in filling part of the fuse shells with powdered calcium sulphate, which is commonly called gypsum or plaster of paris. She was required to put some of this powder in the

fuses, and the fuses which were in a flat tray were then placed in a machine called a "bouncer". This machine bounced the fuses up and down until the white powder in them was packed. This operation was in a room that was partitioned off from the rest of the floor and there was an exhaust fan in the room to carry off any gypsum dust that arose by reason of the bouncing. The employees left the bouncing room, after the fuses were placed on the machine, until the operation was finished. They then took the fuses from the bouncer to their worktables. Here they pressed in by hand a small amount of ground asbestos fibre on top of the powder to hold the powder in place and capped the fuses with a capping machine. There was some residue of the powder about the fuses and some spilling of the ground asbestos as the fuses were capped. This was brushed from the table by the operator. A janitor swept it up from the floor.

Laura R. Counts stated that there was a large quantity of dust in the air and that the powder covered her clothing and hair. She said that it got in her eyes and throat. She also said that it was difficult to clean the powder from her skin and that she and others used oil and kitchen cleanser for this purpose.

Three others, who had been employed by the Bussman Company, testified that there was a "fog" of dust in the room where they worked and that it got in their ears, nose, and throat and troubled them. One of the witnesses was a sister of the claimant and she stated that she spit up blood after working at the operation for about five months.

The claimant worked at filling the fuses from February 6, 1952, until April 11, 1952, when she was seriously injured in an automobile accident. She did not return to work until July, 1952, and then, because of her injuries, she could do no lifting. For this reason she was given a job soldering fuses.

The soldering iron used in this work was stationary and it was heated by a gas flame. A flux was placed on the end of each fuse and the fuse was then held to the iron and the solder applied. There was some smoke or fumes that arose from the iron during this process.

The claimant said that she had "nose bleeds" and that in January, 1953, her nose would bleed and she spit up blood. She said that she reported this to the forewoman. In April of 1953, a mobile X-ray unit came to the plant and took chest X-rays of the employees. The claimant was X-rayed and later informed by letter from the Health Commissioner of the City of St. Louis that the X-ray showed small cystic areas in each apex of the lungs. She said that at that time, in addition to the nose bleeds and bleeding from her ears, she had a pain in her back and shoulders and that she spit up some blood.

A medical doctor, testifying on behalf of the claimant, stated that he first treated her in February of 1952 for a sore throat and tonsilitis. This condition cleared up and he did not see her again until April of 1953, when she came to him with a severe cold. He had some X-rays made which showed no tubercular condition of the lungs but did show a thickening and infiltration of the apices. He said that there were cystic areas in each apex. He said that any dust where she worked would cause the condition that he found.

The medical history of the claimant disclosed that as a small child she suffered from scrofula, which is tuberculosis of a gland. In 1945 she had an appendectomy. In 1949 she suffered a fractured jaw. One of her injuries resulting from the automobile accident in 1952 necessitated the removal of her spleen. In 1952 she also had her tonsils and adenoids removed. A record of the City Hospital dated April 1, 1952, showed that the claimant suffered from acute tonsilitis. A chest plate made at that time showed increased density in the right apex of the lung.

The employer put on several employees who testified that neither they nor any other employees were bothered by the powder. The asbestos used was fibrous in form like ground cardboard. It did not contain any dust and would not fly around in the air. There was testimony that the air on both floors where claimant worked was clear. The soldering operation produced a small amount of smoke or fumes at the time the solder was applied to the cap. This caused no coughing or otherwise bothered those engaged in the work.

An industrial engineer for the City of St. Louis stated that he made a test of the quantity of dust encountered by those working as the claimant had worked. He said that the air where the powder was put in the fuses showed 2.38 and 2.56 millions particles of dust per cubic foot of air, and that the allowable concentration is 5 million particles. He took three samples of the air around the soldering operation and these showed .125, .096, and .173 milligrams of lead per ten cubic feet of air. The allowable concentration is 1.5 milligrams. He stated that no health hazard existed in either operation.

A medical doctor, who specialized in industrial lung diseases, was called by the employer. He had examined the claimant on June 30, 1953. He said that the X-rays of the lungs showed a possible thickening in the apices, but that they were negative otherwise. He said that a picture taken with the claimant leaning backwards showed that shadows which had been interpreted as evidence of a cystic area were in fact a pleural shadow and not in the lungs. He said that the X-rays showed no disease of the lungs. He said that asbestos is insoluble and cannot be absorbed. Asbestosis can be determined by X-ray and the X-rays showed no asbestosis. He said that inhaling calcium sulphate or gypsum dust would produce no reaction in the lungs. He found that the claimant had no industrial disease of any kind and that she was able to work.

It was upon the foregoing evidence that the commission found that the employee sustained no disability attributable to her employment, and the employee contends that the finding is contrary to the overwhelming weight of the evidence.

■ In reviewing the evidence to determine its sufficiency to support the award of the commission, we must not substitute our judgment for that of the commission and we must affirm the award if the findings of the commission could have been reasonably made upon consideration of all the evidence before it. Wood v. Wagner Elec. Corp., 355 Mo. 670, 197 S.W.2d 647. We are not concerned with the question of whether or not a finding in favor of the claimant would have been supported by substantial evidence. We are only concerned with the sufficiency of the evidence to support the award made. Francis v. Sam Miller Motors, Mo., 282 S.W.2d 5; Karch v. Empire Dist. Electric Co., 358 Mo. 1062, 218 S.W.2d 765.

■ The evidence of the engineer who tested the air and found the dust and lead of quantities insufficient to be harmful; the testimony of the doctor, who specialized in lung diseases, that the claimant had no disease attributable to her employment, was substantial evidence. The fact that the claimant's doctor testified to the contrary did nothing more than present an issue of fact for the determination of the commission. It must consequently be held that the circuit court properly sustained the award of the commission. Vollmar v. Board of Jewish Education, Mo., 287 S.W.2d 868; Williams v. International Shoe Co., Mo.App., 213 S.W.2d 657.

The finding of the commission is as follows:

"We find from all the evidence that the disability or condition alleged by employee, Laura R. Counts, was neither caused nor aggravated by any occupational disease related to her employment, and that she did not sustain

any occupational disease arising out of and in the course of her employment with Bussman Manufacturing Company.

"We further find that employee did not sustain any permanent partial or temporary total disability as the result of any occupational disease.

"The specific findings of fact on the question of occupational disease requested by employee are as follows:

"We find that employee failed to prove that her employment with Bussman Manufacturing Company caused her to sustain any occupational disease, and that any disability that she may have is not the result of her employment with said company.

"We further find that employee does not have any known or recognized occupational disease of the lungs."

 The claimant contends that the award was erroneously reached by reason of that part of the findings above quoted, which is as follows:

"We further find that employee does not have any known or recognized occupational disease of the lungs."

It is argued that simply because a disease is unknown is no reason for denying compensation. That, however, is giving an effect to the words which is not present. There is no finding that the employee suffered from an unknown disease. The clear finding is that she failed to prove her employment caused her to sustain *any* occupational disease. The sentence complained of is mere surplusage. It is established law that the finding and award of the commission shall not be held inoperative by reasons technical in nature. Crutcher v. Curtiss-Robertson Airplane Mfg. Co., 331 Mo. 169, 52 S.W.2d 1019; Cebak v. John Nooter Boiler Works Co., Mo.App., 258 S.W.2d 262.

Upon the facts and for the reasons set forth above, it is the recommendation of the Commissioner that the judgment of the circuit court be affirmed.

PER CURIAM.

The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed.

ANDERSON, P. J., MATTHES, J., and GEORGE P. ADAMS, Special Judge, concur.