Jessie BARTON, Plaintiff-Respondent,

v.

WESTERN FIREPROOFING COMPANY and Liberty Mutual Insurance Company, Defendants-Appellants.

No. 7777.

Springfield Court of Appeals.

Missouri.

July 17, 1959.

Seiler, Blanchard & Van Fleet, Joplin, for defendants-appellants.

Daniel J. Leary, Joplin, for plaintiff-respondent.

STONE, Presiding Judge.

In this proceeding under the Missouri Workmen's Compensation Law, Jessie Barton (hereinafter called claimant) seeks benefits on account of injuries sustained in a vehicular collision in Jasper County, Missouri, on Friday, December 23, 1955, involving a GMC two-ton truck owned by Western Fireproofing Company (hereinafter called Western) and then being driven by Lawrence Barton, claimant's husband, in which claimant was riding at the time of accident. The referee found for claimant. On review, the Industrial Commission (with one member dissenting) found for the employer (Western) and its insurer. The circuit court reversed and remanded to the Commission. On this appeal, the employer and the insurer seek reinstatement of the final award of the Commission denying compensation. The sole issue is whether claimant's injury arose out of and in the course of her employment by Western. Section 287.-120, subd. 1 RSMo 1949, V.A.M.S.

■ We emphasize at the outset that, although on judicial review the courts are authorized to determine whether, upon the entire record, the Industrial Commission reasonably could have made the findings and award under consideration, this does not mean that either the circuit or the appellate court should substitute its own judgment on the evidence for that of the Commission; but, on the contrary, the reviewing court may set aside the findings and award of the Commission only if they are clearly contrary to the

overwhelming weight of the evidence, when the evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to such findings and award. Hogue v. Wurdack, Mo., 316 S.W.2d 523, 526; Hance v. Johnson, Stephens & Shinkle Shoe Co., Mo.App., 306 S.W.2d 80, 83(5–7); Garrison v. Campbell "66" Express, Inc., Mo.App., 297 S.W.2d 22, 30(8), and cases there collected. Our statement of facts accords appropriate and required recognition to that basic principle. Slider v. Brown Shoe Co., Mo.App., 308 S.W.2d 306, 307; Davis v. McKinney, Mo.App., 303 S.W.2d 189, 190.

Western is a roofing subcontractor with headquarters in Kansas City which operates in several midwestern states. For some twelve to fourteen years prior to the accident in 1955, Lawrence Barton (sometimes referred to as Lawrence, sometimes as claimant's husband) had been "superintendent" or "foreman" for Western, in charge of its roofing crew. Lawrence's duties were comprehensive and important. In the language of witness Means, the "owner" of Western, called by claimant and obviously not unfriendly to her cause, "he (Lawrence) is in charge of the construction, he's in charge of the crew, and he's in charge of the equipment and the (GMC two-ton) truck, and he's in charge of the reports which have to do with the operation"—"it is his duty to report daily and weekly the payroll and job information to the office" in Kansas City. However, as Means added, "for many years—twenty years or more—we have indicated to him, and other foremen we have had, that it would be proper for them to have that done for them by anyone at their discretion and we would compensate them for it." About 1946 or 1947 (several years after Lawrence went to work for Western), claimant began to prepare reports. In her words, "he (Lawrence) asked me if I would make out the payroll— * * * there was no one else there to make it out and he had too much other work to do to make it out, to go to the bank." Without descending into wholly unimportant detail, it will suffice to say that the principal services rendered by claimant were preparation of a daily time sheet from information supplied by claimant's husband at the close of each working day, making out a weekly payroll report including computation of social security and withholding taxes, weekly payment of the crew in cash out of funds sent from the Kansas City office in response to claimant's estimate, and preparation of a weekly expense sheet accounting for the funds received. Claimant worked in the same capacity to the time of accident and, during the entire period of her employment, was paid $10 per week—the amount which Western "allowed" its foreman to spend for such services.

As Lawrence and the roofing crew moved from job to job, pursuant to directions from Western's headquarters, claimant went with them. In fact, she had traveled with her husband "all the time" he had worked for Western. When on a job, they lived in a hotel or an apartment, depending upon the anticipated length of their stay. In going from one job to another, Lawrence usually drove his own pickup but sometimes drove the GMC two-ton truck owned by Western, when there was no available driver to whom he was willing to entrust the truck and the equipment thereby transported. Claimant always rode with her husband, regardless of what vehicle he was driving at the time. Each member of the roofing crew, who drove his personal automobile from job to job, received a travel allowance equivalent to the bus fare between job sites, but no travel expense of any character was ever allowed or paid to claimant.

On the morning of Friday, December 23, 1955, the roofing crew completed "the Cessna job" at Wichita, Kansas. The next job scheduled for the crew was at Madison, Missouri, about thirteen miles east of Moberly in the northeast part of this state.

Lawrence knew that the crew "was supposed" to start on the Madison job soon after Christmas if the contractor was ready and "the weather permitted," but he did not know "the exact date" on which the crew would be directed to report at Madison. Accordingly, the crew temporarily disbanded over the Christmas holiday with the members going to their respective homes, "wherever that might be." Being informed over long distance that Lawrence and his wife (claimant) intended to go to their home at Fordland, Missouri, about twenty-eight miles east of Springfield in the south central part of this state, to stay over the Christmas holiday and until notified by Western that "the Madison job was ready," Means (Western's "owner") said that would be "all right."

When the Cessna job at Wichita was finished, claimant found that she did not have sufficient cash on hand to meet the payroll in full. So, she paid all members of the crew, excepting only her husband and Clarence Ince (who also lived at Fordland, Missouri, and was returning there over the Christmas holiday), and arranged over long distance for Western to send a check to her at Fordland "to cover the pay to Lawrence and to Clarence Ince." After receipt of this check, claimant would have finished her weekly expense sheet accounting for funds supplied by Western, including such additional remittance. Both claimant and her husband readily conceded that the only reason Western's check was to be sent to Fordland was because they were going to Fordland for the Christmas holiday, and it is perfectly plain from the record that, if claimant had so desired, Western would have sent the check to her elsewhere and she could have completed her weekly expense sheet "whenever she got to where the check was."

Among Lawrence's responsibilities were those of caring for Western's GMC truck and equipment and of making appropriate disposition of any surplus material remaining upon completion of a job. Knowing that "some sheet rock left over" from the Cessna job at Wichita was too short for use on the Madison job but that it could be used on the Delaware School job in Springfield, Missouri (theretofore subcontracted to Western and subsequently done in April 1956), Lawrence decided to take this sheet rock to the site of the Delaware School job, then store Western's GMC truck and equipment (including a large mixer mounted on wheels and towed behind the truck) at a safe place in Springfield, and proceed to Fordland with his wife (claimant) in Lawrence's Chevrolet pickup which Clarence Ince would drive from Wichita to Springfield. While, in carrying out this plan, Lawrence was engaged in conveying the surplus sheet rock to the site of the Delaware School job, Western's GMC truck (towing the large mixer) was involved in an accident in Jasper County, Missouri. Pursuant to her husband's request that she ride with him and in accordance with her settled practice so to do, claimant was in the cab of the GMC truck, then being driven by her husband, when the accident occurred. On this state of facts, the Industrial Commission found specifically that claimant's employment by Western "had no part in creating the necessity for travel to Fordland, Missouri, and that this journey would have gone forward though the business errand had been dropped, and that the journey would have been cancelled upon failure of the private purpose"; "that it was not the custom of the employment to furnish the employee (claimant) transportation to and from her home in a truck of the employer (Western)"; and that, therefore, claimant's accident did not arise out of and in the course of her employment.

■ Numerous Missouri cases collected and cited in Heaton v. Ferrell, Mo.App., 325 S.W.2d 800, have reiterated the generalized definition that an injury arises *out of the employment* when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury, and *in the course*

*of the employment* when it occurs within the period of employment, at a place where the employee reasonably may be, and while such employee reasonably is fulfilling the duties of his or her employment or is engaged in doing something incidental thereto; but, recognizing the difficulty often encountered in applying broad legal principles to specific factual situations, our courts as frequently have said that no all-embracing definition of the phrase "arising out of and in the course of * employment" has yet been framed, and have added the common-sense admonition that every case involving the quoted phrase should be decided upon its own particular facts and circumstances and not by formula.

■ As the Industrial Commission properly recognized, instant claimant and her husband were on a so-called dual-purpose trip at the time of accident. Succinctly put, the general rule is that an "(i)njury during a trip which serves both a business and a personal purpose is within the course of employment if the trip involves the performance of a service for the employer which would have caused the trip to be taken by someone even if it had not coincided with the personal journey." Larson's Workmen's Compensation Law, Vol. 1, § 18.00, p. 240. Or, as stated by Justice Cardozo in Marks' Dependents v. Gray, 251 N.Y. 90, 167 N.E. 181, 183(2), in a lucid statement of principle said to have "never yet been improved upon" [Larson's Workmen's Compensation Law, Vol. 1, § 18.12, p. 241] and on several occasions quoted or cited with approval by our Missouri courts: [1] "To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. * * * The test in brief is this: If the work of the employee creates the

necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. * * If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk."

In the instant case, we must bear in mind that Jessie Barton, not her husband, is the claimant, and we must not confuse the character and scope of claimant's employment with that of her husband's employment. There is no question but that Lawrence, admittedly invested with broad discretion in the discharge of his responsibilities to care for Western's GMC truck and equipment and to dispose of surplus material, was acting in the course of his employment at the time of accident. The employer and insurer quickly so agree. But, the character and scope of *claimant's* employment, and such business purpose as *she* had on that particular trip, were vastly different. Both claimant and her husband frankly concede that she neither had nor assumed any obligation or duty with respect to care of Western's truck or equipment or with respect to disposition of surplus material, those being the sole and separate responsibilities of her husband. Thus, claimant had no business service of any kind or character to perform for Western en route from Wichita or at Springfield, the terminal point of the trip for Western's truck.

The only business service, which *claimant* intended to perform, would have been rendered at Fordland, Missouri, to which destination she and her husband would have traveled in his Chevrolet pickup, and such

---

1. McMain v. J. J. Connor & Sons Const. Co., 337 Mo. 40, 43–44, 85 S.W.2d 43–44; O'Dell v. Lost Trail, Inc., 339 Mo. 1108, 1117, 100 S.W.2d 289, 293; Brown v. Weber Implement & Auto Co., 357 Mo. 1, 9, 206 S.W.2d 350, 354; Gingell

v. Walters Contracting Corp., Mo.,App., 303 S.W.2d 683, 688; Heaton v. Ferrell, Mo.App., 325 S.W.2d 800. See also Hopkins v. J. I. Case Co., Mo., 293 S.W.2d 402, 407.

business service at Fordland would have been limited to payment of the remainder of the wages due her husband and Clarence Ince and completion of her weekly expense sheet. Western did not send claimant to Fordland; and, as we have heretofore noted, Western's additional remittance was being mailed to Fordland simply because claimant so requested and because that was the location where she and her husband, of their own volition, had determined that they would spend the Christmas holiday and would await notification concerning the Madison job. In view of the devoted marital relationship between claimant and her husband, it would be most unreasonable to infer that the two would have been separated at Christmas; and, wherever they might have decided to go for that holiday, Western's check could and would have been transmitted to claimant and, at that location, the wages owing to her husband could have been paid. Claimant knew the amount due to Clarence Ince, the only other member of the crew to whom any payment from Western's additional remittance was contemplated; and, the balance of Ince's wages could have been forwarded to him immediately upon receipt of Western's remittance, if that had been deemed desirable. In any event, it is perfectly obvious that claimant could have completed her weekly expense sheet upon receipt of Western's check, wherever that check might have reached her.

 The determinative issue in this case is as to whether the business service

which claimant would have performed for Western at Fordland "would have caused the trip to be taken by someone even if it had not coincided with the personal journey"? Larson's Workmen's Compensation Law, Vol. 1, § 18.00, p. 240. Or, as otherwise stated, did claimant's work, limited in scope as it was, create the necessity for travel to Fordland, and would the journey to Fordland have gone forward though the business errand had been dropped? Marks' Dependents v. Gray, supra, and cases cited in footnote 1, supra. The burden rested upon claimant to show that her injury arose out of and in the course of her employment;[2] and, our inquiry on judicial review is whether the findings and award of the Industrial Commission are supported by competent and substantial evidence upon the whole record, *not* whether an award to claimant would have found such support.[3] Recognizing that it is for the Industrial Commission, as trier of the facts, to draw from the evidence such inferences as may be reasonably permissible [Conley v. Meyers, Mo., 304 S.W.2d 9, 12], our Supreme Court has affirmed final awards of the Commission where the inferences drawn in support of the awards have not been "strong" but have rested upon "substantial evidence circumstantially." Dehoney v. B-W Brake Co., Mo., 271 S.W.2d 565, 569; Goetz v. J. D. Carson Co., 357 Mo. 125, 132, 206 S.W.2d 530, 535. Without undertaking, in the case at bar, the useless and unrewarding task of determining whether the evidence would have permitted an award to claimant, we are of the opinion

2. Toole v. Bechtel Corp., Mo., 291 S.W.2d 874, 879(1); Francis v. Sam Miller Motors, Mo., 282 S.W.2d 5, 12(2); Duff v. St. Louis Mining & Milling Corp., 363 Mo. 944, 255 S.W.2d 792, 794(3); Fowler v. Baalmann, Inc., 361 Mo. 204, 234 S.W.2d 11, 16(6).

3. Conley v. Meyers, Mo., 304 S.W.2d 9, 16; Francis v. Sam Miller Motors, supra, 282 S.W.2d loc. cit. 13; Danford v. Reinhardt Packing Co., 361 Mo. 588, 595, 235 S.W.2d 278, 281; Karch v. Empire Dist. Electric Co., 358 Mo. 1062, 1070, 218 S.W.2d 765, 770; Davis v. Mc-

Kinney, Mo.App., 303 S.W.2d 189, 193; Counts v. Bussman Mfg. Co., Mo.App., 298 S.W.2d 508, 510(1); Garbo v. P. M. Bruner Granitoid Co., Mo.App., 249 S.W. 2d 477, 480; Koelmel v. Montgomery Ward & Co., Mo.App., 247 S.W.2d 880, 886(2). See also O'Neil v. Fred Evens Motor Sales Co., Mo.App., 160 S.W.2d 775, 778(2, 3); Buchanan v. Nicozisis, Mo.App., 78 S.W.2d 492, 495(5); Wright v. Penrod, Jurden & Clark Co., 229 Mo.App. 1147, 88 S.W.2d 411, 416 (5); De Moss v. Evens & Howard Fire Brick Co., Mo.App., 57 S.W.2d 720, 721 (5).

that the Commission drew the inferences afforded most persuasive and abundant support upon the record as a whole when it found "that the employment had no part in creating the necessity for travel to Fordland, Missouri, and that this journey would have gone forward though the business errand had been dropped, and that the journey would have been cancelled upon failure of the private purpose." Certainly, we cannot say upon the transcript presented to us that these findings were clearly contrary to the overwhelming weight of the evidence, when such evidence in its entirety, including all legitimate inferences reasonably deducible therefrom, is viewed in the light most favorable to the award. Garrison v. Campbell "66" Express, Inc., supra, 297 S.W.2d loc. cit. 30(8), and cases there cited.

The further finding of the Commission "that it was not the custom of the employment to furnish the employee (claimant) transportation to and from her home in a truck of the employer (Western)" is in clear accord with the undisputed evidence on this subject. For that matter, claimant's counsel concedes with commendable candor that this is not a "to and from work" case,[4] although the referee in the first instance predicated his finding [5] for claimant on that basis, citing Larson's Workmen's Compensation Law, Vol. 1, §§ 17.00, 17.10 and 17.30, pp. 233, 236. Furthermore, claimant would not have been riding in Western's GMC truck at the time of accident but for the circumstance (unfortunate in retrospect) that her son, Billy Joe Barton, a member of the roofing crew, had gone to Kansas City to spend the Christmas holiday with his wife's family. Otherwise, as Lawrence testified, "he (Billy Joe) would have been driving the truck" on the trip from Wichita to Springfield, and claimant, who always rode with her husband because of their marital relationship, would have been with him in his Chevrolet pickup.

Nor, in the particular circumstances of this case, need we concern ourselves with determination of the controversial question as to whether transportation between job sites had become an incident to claimant's employment by Western, notwithstanding the admitted fact that no travel expense was ever allowed or paid to her. For, at the time of accident, claimant was not en route between job sites but rather was on a trip to a location of her own selection, to-wit, her home at Fordland, Missouri, which said trip (as the Commission reasonably found) "would have gone forward though the business errand had been dropped, and * * * would have been cancelled upon failure of the private purpose."

We are constrained to conclude that the judgment of the circuit court reversing and remanding the cause to the Industrial Commission should be set aside, and that the cause should be remanded to the circuit court with directions to enter judgment affirming the final award of the Industrial Commission denying compensation. It is so ordered.

McDOWELL and RUARK, JJ., concur.

4. For a typical "to and from work" situation, see Reneau v. Bales Electric Co., Mo., 303 S.W.2d 75.

5. Judical review is of the final award of the Industrial Commission, not of the referee's findings and award. Michler v. Krey Packing Co., 363 Mo. 707, 716, 253 S.W.2d 136, 140; Ossery v. Burger-Baird Engraving Co., Mo., 256 S.W.2d 805, 808; Carriker v. Lindsey, Mo.App., 313 S.W.2d 43, 44(3); Scherr v. Siding & Roofing Sales Co., Mo.App., 305 S.W. 2d 62, 64(3); Barron v. Mississippi Lime Co. of Missouri, Mo.App., 285 S.W.2d 46, 49; Banks v. City of Hannibal, Mo. App., 283 S.W.2d 909, 913(2); Clark v. Frazier-Davis Const. Co., Mo.App., 258 S.W.2d 934, 937.